UNITED STATES of America, Appellee,

v.

John A. CUFFIE, Appellant.

Nos. 92–3263, 95–3128.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 12, 1996.

Decided April 5, 1996.

Geoffrey G. Bestor, Assistant United States Attorney, Washington, DC, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, William E. Lawler, III, Assistant United States Attorneys, were on the brief. Elizabeth Trosman entered an appearance.

Lee H. Karlin, appointed by the court, Washington, DC, argued the cause and filed the briefs, for appellant.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant John A. Cuffie appeals from his convictions of possession with intent to distribute cocaine base and conspiracy to possess and distribute cocaine base, as well as from the denial of his motion for a new trial, on the ground that the government failed to disclose favorable evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Our recent decision in *United States v. Smith*, 77 F.3d 511, 515 (D.C.Cir.1996), controls the outcome of this appeal. The government did not inform Cuffie that a key witness against him at trial, Ronald F. Moore, had perjured himself in another judicial proceeding. Because there is a reasonable probability that the verdict would have been different if Cuffie had been able to use the undisclosed evidence to impeach Moore at trial, we reverse and remand for a new trial.

## I.

**Berry's expungement proceeding.** The undisclosed *Brady* material in Cuffie's trial was Moore's testimony at a hearing in D.C. Superior Court on September 30, 1991, to expunge the arrest record of Moore's cousin Walter E. ("Gene") Berry. Moore had been a police officer when Berry was arrested on January 26, 1989, but had lost his police powers in September 1990.

At the expungement hearing, Moore testified that on the day that Berry was arrested, Berry had called Moore while Moore was at work at the police station. Moore testified that Berry told him that his car had been stolen over the weekend and that when he got it back he found drugs in it. According to Moore, he told Berry that his shift would end at 11 p.m. and that Berry should bring the drugs to him then. Moore also testified that he waited until about 12 a.m. and then went home, discovering the next day that Berry had been arrested on his way to the police station. Berry also testified and supported Moore's version of events, adding that he had reported the car stolen when a friend he had lent it to did not return it. Berry's friend, Bryan J. Bunyan, testified that he had borrowed Berry's car and had left the cocaine in the car without Berry's knowledge.

The government called James Slaughterbeck, a police sergeant who maintained officers' attendance records. Slaughterbeck testified that Moore went off duty at 8 p.m. on January 26, 1989, and took three hours leave for the period from 8 to 11 p.m. The Superior Court judge stated that he was "extremely concerned" by the inconsistency between Moore's testimony and the police-station records. In addition, the judge noted that Berry was unable to explain the presence of Metropolitan Police Department drug test kits in the car. Because of the problems with Moore's testimony and the drug test kits, the judge denied Berry's motion to expunge his arrest record.

**"First Stop" investigation.** In mid-August 1991, the Metropolitan Police Department began an investigation into suspected drug-dealing at the "First Stop" convenience store at the corner of New York Avenue and Bladensburg Road, in Northeast D.C. The police suspected that Cuffie was part of the drug-dealing ring, along with Moore, Berry, Bunyan, and three others, operating from that location. An undercover informant bought drugs at the "First Stop" store on

September 20, 1991, when Cuffie was present but did not participate directly in the sale. The informant tried to involve Cuffie in a drug purchase on November 8, 1991, but Cuffie did not show up at the "First Stop" store. That sale attempt ended when one of the drug dealers discovered that the informant was wired with a recording device. In a later telephone call, the informant found out that the drug ring stored the cocaine at Moore's apartment but kept it locked up because Moore was a drug addict.

**Search of Moore's apartment.** On December 9, 1991, at about 1:45 a.m., Moore was arrested with four packets of crack cocaine and charged with possession of cocaine base. The police testified at Cuffie's trial that Moore's arrest was unrelated to the First Stop investigation. Fearing that Moore's confederates might react by removing the cocaine stored in Moore's apartment, the police obtained a search warrant and entered Moore's apartment at about 4:55 p.m. on December 9.

When the police arrived, the only person in Moore's apartment was Cuffie. Sergeant Michael P. Wilson and Detective Anthony Washington testified that Cuffie was standing in front of the locked door to one of the two bedrooms in the apartment. When Cuffie complied with police orders to put his hands in the air, a set of keys fell out of his right hand. The police determined that one of the keys that Cuffie dropped opened the bedroom door. Inside the locked bedroom, the police found a closet with a safe, and beside the safe was a plastic container with sixty grams of crack cocaine and six grams of powder cocaine.

Coincidentally, while the police were searching the apartment, Berry arrived. The police determined that none of the keys on Berry's person fit the lock to the bedroom door. Moreover, none of the keys found on Moore when he was arrested earlier that day turned out to fit the lock.

**Cuffie's trial.** Cuffie and his six co-defendants (including Moore) were charged in a fourteen-count indictment. All of the defendants except for Cuffie pleaded guilty. At a December 20, 1991, bond hearing for Moore, the prosecutor asked police officer John J. Brennan about the expungement proceeding for Berry, and Brennan explained the inconsistency in Moore's testimony on behalf of Berry.

At Cuffie's trial in July 1992, Moore testified that Cuffie had paid him to keep drugs in Moore's apartment and bring women there; that Cuffie had brought the safe to one of the bedrooms; that Moore had not had a key to the bedroom; and that Moore had never seen anyone but Cuffie go into the bedroom. On cross-examination by Cuffie's counsel, Moore testified that he used to have a $200 to $300 a day cocaine habit. Moore admitted that he knew that former police officers often have a bad time in jail; that he "would do almost anything not to go to jail"; and that until two days before his testimony he had maintained his innocence. Moore also disclosed the details of his plea agreement with the government. Finally, Cuffie's counsel juxtaposed Moore's violation of his oath as a police officer with the oath that Moore took as a witness.

At the close of the government's case-in-chief, the district court dismissed twelve counts based on the September 20, 1991, and the November 8, 1991, incidents for lack of evidence to connect Cuffie to the drug sales on those dates. The remaining two counts to go to the jury were for conspiracy to distribute and to possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 846 (1988), and for possession with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (1988) and 18 U.S.C. § 2 (1988) (the December 9, 1991, incident).

In his closing argument, Cuffie's counsel told the jury that the case "comes down to one point only, and that point is Officer Ronnie Moore." He asked rhetorically, "if the case, in fact, turns on this key [found on Cuffie], then ask yourselves why did [the government] have to put Ronnie Moore on the stand?" He answered his own question, "[The government] needed Mr. Moore to put drugs in John Cuffie's hand, to put John Cuffie in the apartment, and to give John

Cuffie a role in an organization which never existed."

The jury found Cuffie guilty of the two remaining charges, and the district court sentenced Cuffie to 235 months' imprisonment. At the sentencing hearing for co-defendant Berry, who had pleaded guilty, the prosecutor told the court that, although the police had never found a key to the locked bedroom in Moore's apartment belonging to Berry, "I think there was some element of access there." When the court decided to grant Berry a downward departure, the prosecutor revealed Berry's 1989 arrest and stated that he "believe[d] that the evidence would show ... that Mr. Berry suborned perjury in that case in connection with it being dropped." According to the prosecutor, Berry, Bunyan and Moore "got together and the reason they did it was to get the charge off Gene [Berry]."

The district court denied Cuffie's motion for a new trial, stating that

> defendant has failed to establish a violation by the government of the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or a reasonable probability that the outcome of his trial would have been different had certain information been disclosed to him, *see United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)....

## II.

■ The government commendably concedes on appeal that its failure to disclose Moore's perjury in the expungement proceeding violated the *Brady* rule. The prosecution has the same duty under *Brady* to disclose impeachment evidence as it does exculpatory evidence. *Kyles v. Whitley*, —— U.S. ——, ——, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995); *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). As Moore's bond hearing and Berry's sentencing hearing make clear, the government was aware of Moore's.

perjury on Berry's behalf and used the perjury against both Moore and Berry. The government properly concedes also that the fact of Moore's perjury would have been admissible, on cross-examination concerning Moore's truthfulness, as a specific instance of his conduct probative of untruthfulness. *See* FED.R.EVID. 608(b).[1]

■ Consequently, the only issue on appeal is whether the evidence of Moore's perjury was material. Our inquiry is confined to a determination of whether " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles*, —— U.S. at ——, 115 S.Ct. at 1565 (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.)). The Supreme Court has emphasized that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at ——, 115 S.Ct. at 1566. Therefore, our focus is on the "potential impact that the undisclosed evidence might have had on the fairness of the proceedings" rather than on the overall strength of the government's case. *Smith*, 77 F.3d at 515, *United States v. Lloyd*, 71 F.3d 408, 411 (D.C.Cir.1995). Evidence is material if "the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict." *Smith*, at 515. Because the materiality of *Brady* evidence is a question of law, and the *Brady* facts are undisputed, our review is de novo. *Lloyd*, 71 F.3d at 411.

■ The government contends that Moore was thoroughly impeached at trial, such that the undisclosed evidence would have furnished only cumulative impeachment. Yet " 'the fact that other impeachment evidence was available to defense counsel does not render additional impeachment evidence immaterial.' " *Smith*, 77 F.3d at 515 (quoting *United States v. O'Conner*, 64 F.3d 355,

---

1. We need not address Cuffie's contention that Moore's perjury at the expungement hearing would have been admissible to prove Moore's bias toward exculpating Berry.

359 (8th Cir.1995) (per curiam)).[2] In *Smith,* the court decided that "we must look not to the ways defense counsel was able to impeach [the witness], but to the ways in which the witness' testimony was allowed to stand unchallenged." *Id.* Thus, undisclosed impeachment evidence can be immaterial because of its cumulative nature only if the witness was already impeached at trial by the same kind of evidence.[3] None of the impeachment that defense counsel conducted at Cuffie's trial, however, related to perjury. Moore was impeached on the basis that he was a cocaine addict; that he was a cooperating witness; that, as the owner of the apartment, he had an incentive to place responsibility for the drugs on someone else; and that he had violated his oath as a police officer to uphold the law. By contrast, the undisclosed evidence that Moore had lied under oath in a previous court proceeding involving the same drug conspiracy identified an infirmity in Moore's testimony that is almost unique in its detrimental effect on a witness' credibility.

In *Smith,* a very similar case, the court concluded that undisclosed impeachment evidence concerning a government witness was material. Although the defense in *Smith* knew that the witness had entered into a plea agreement with the government under which ten of eleven counts against him in federal court were dismissed and the government agreed to file a motion recommending a downward departure in sentencing, the government did not disclose that it also agreed to dismiss two felony charges pending in D.C.Superior Court. *Smith,* 77 F.3d at 513, 515. The court held that the additional impeachment evidence was not cumulative because the defense could have used it to impeach the witness' testimony, which went unchallenged, that he had revealed in court the full extent of his plea agreement with the government. *Id.* at 515–16. Cuffie's case for materiality is even stronger than that in *Smith* because the undisclosed evidence does not involve merely a witness' cooperation with the government but a witness' prior perjury. In light of the axiomatic importance of truthful testimony for the integrity of judicial proceedings, undisclosed evidence of a witness' prior perjury has a significant impact on the fairness of the trial.

■ Second, the government maintains that the undisclosed impeachment evidence was immaterial because Moore's testimony was not essential to the prosecution's case against Cuffie. Besides Moore's testimony, the government presented circumstantial evidence that Cuffie possessed the drugs found in the bedroom of Moore's apartment, namely that Cuffie was in the apartment when the search warrant was executed; that he had a key to the locked bedroom containing the drugs on his person; that neither Moore nor Berry had a key to the locked bedroom on his person when he was arrested; and that there was other evidence of drug activity in the apartment. Although the remaining evidence standing alone would have been sufficient to convict, the *Brady* materiality inquiry is not an assessment of the sufficiency of the evidence. *Kyles,* — U.S. at —, 115 S.Ct. at 1566. Rather, the court has emphasized that "the amount of additional evidence indicating guilt is not dispositive of our inquiry." *Smith,* 77 F.3d at 515. Moore's testimony was an important part of the government's case against Cuffie because, as Cuffie's counsel argued to the jury, it established the only direct connection between Cuffie and the drugs found during the search of Moore's apartment.

For these reasons we are unconvinced that the jury verdict is "worthy of confidence" in light of the undisclosed impeachment evi-

---

**2.** As the court explained in *Smith,* 77 F.3d at 515 n. 2, the seemingly contrary proposition with respect to cumulative impeachment in *United States v. Derr,* 990 F.2d 1330, 1336 (D.C.Cir. 1993), was dictum because the *Derr* court concluded that the undisclosed evidence was inadmissible at trial and would not have led to admissible evidence. *Id.* at 1335–36; *cf. Wood v. Bartholomew,* — U.S. —, —, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995) (per curiam).

**3.** *See, e.g., United States v. Maloney,* 71 F.3d 645, 653 (7th Cir.1995); *United States v. Quintanilla,* 25 F.3d 694, 699 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994); *United States v. Kozinski,* 16 F.3d 795, 818 (7th Cir.1994); *United States v. DeLuna,* 10 F.3d 1529, 1535 (10th Cir.1993); *United States v. Marashi,* 913 F.2d 724, 732–33 (9th Cir.1990).

dence. A cross-examination of Moore that revealed evidence casting serious doubt upon Moore's truthfulness as a witness in a judicial proceeding could have changed the nature of Cuffie's trial. *Cf. Smith,* 77 F.3d at 516. Although the jury was presented with other reasons not to believe Moore's testimony, perjury is different. Accordingly, because the undisclosed evidence was material, we reverse and remand for a new trial.