**UNITED STATES of America,**
**Appellee,**

v.

**Walter J. BOWIE, Appellant.**

**Nos. 98–3146, 99–3027.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 18, 1999.

Decided Dec. 21, 1999.

Paul L. Knight, appointed by the court, argued the cause and filed the briefs for appellant.

Barbara A. Grewe, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys. Mary-Patrice Brown, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE and RANDOLPH, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

**RANDOLPH, Circuit Judge:**

As the rules governing criminal trials multiply, even the simplest prosecution can generate a host of legal errors. We have before us a three-witness case, charging unlawful possession of a firearm and assault on two police officers. Yet there are problems with the indictment, with the government's failure to disclose evidence to the accused, with the standard used to assess the effect of this, and with the sentence. The case must be remanded, at least for resentencing, as the government now acknowledges. Among the open questions is whether there must also be a new trial.

I

Walter J. Bowie went to trial in March 1998 on a three count indictment. The first count charged that, as a convicted felon, he unlawfully possessed a firearm. *See* 18 U.S.C. § 922(g)(1). The other counts charged him with assaulting, resisting, opposing, impeding and interfering with a police officer "while armed with a deadly or dangerous weapon," in violation of local law. Each of these two counts closed with the same parenthetical: "(**Assaulting, Resisting, or Interfering with a Police Officer While Armed With a Dangerous Weapon**, in violation of Title 22, District of Columbia Code, Sections 505(b) and 3202(a)(1))".

The prosecution and defense stipulated to Bowie's status as a convicted felon. The district court denied a motion to suppress and trial commenced. The prosecution called Lonnie Moses and Paul Riggins, both police officers, and an expert witness. The defense called no one. Officer Moses testified that he saw Bowie on the street receiving money from an unidentified man and handing the man something in return. He told officer Riggins what he had witnessed. The officers approached the men, Moses wearing a vest with the word "Police" across the front, Riggins in full uniform. The unidentified man walked away. When Moses called

out, Bowie came toward the officers. As Moses reached for Bowie's arm, Bowie knocked the officer's hand away and then shoved him in the chest. A struggle ensued. According to Moses, as he and Riggins were wrestling Bowie to the ground, trying to handcuff him, Bowie kept reaching into his waist area. When they finally subdued him, and stood him up, Moses pulled up the front of Bowie's shirt and a loaded .357 magnum—a large pistol—fell out, hitting Moses on the shin. Officer Riggins's version of the events tallied with that of Moses, except that Riggins testified the pistol fell out while they were still struggling to get Bowie to the ground. The government's expert testified that the pistol had been manufactured in Connecticut. The jury returned a verdict of guilty on all counts.

About a month later, the prosecutor sent a letter to defense counsel disclosing that Moses was under investigation by the United States Attorney's Office regarding his testimony in an unrelated case and that the investigation had begun before Bowie's trial. This information had not been revealed before trial although Bowie's attorney had requested the government to provide all material and information covered by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Bowie's attorney responded to the letter with a motion for a new trial. During the hearing on the motion, more details emerged about the investigation of officer Moses.

On January 14, 1998—the date will become important—Moses testified in a suppression hearing before the Honorable A. Franklin Burgess of the Superior Court of the District of Columbia, the local trial court. The case bore the title *United States v. Davon Williams.* When the hearing ended after two days of testimony, Judge Burgess suppressed the evidence, finding the defense witnesses more credible than Moses.

As the chief prosecutor in the local and the federal courts, the United States At-

torney for the District of Columbia maintains a computerized list of police officers who are under investigation—the *"Lewis* list," after *Lewis v. United States,* 408 A.2d 303, 306 (D.C.1979). Moses became the subject of an investigation into the truthfulness of his testimony in the *Williams* case on February 27, 1998. His name was added to the *Lewis* list, when exactly is unknown, but the government concedes it was before the start of Bowie's trial on March 10, 1998. The prosecutor explained that when she checked the *Lewis* list sometime before Bowie's trial, she did not find Moses's name and that she became aware of his listing only when Moses called her three days after Bowie's conviction saying "You may have a problem, you know, I just learned I have been placed on the Lewis list."

At the hearing on Bowie's motion, the prosecutor and the defense attorney treated the issue, not in terms of the prosecutor's disclosure duty under *Brady,* but in terms of newly-discovered evidence. The district court did the same, denying the new trial motion because "(1) it is unlikely that the newly discovered evidence upon which Mr. Bowie grounds his motion—Officer Moses's testimony in and the surrounding circumstances of the Devon Williams case—would be admissible at a new trial; (2) the new evidence is merely impeaching; (3) the evidence is not of such a nature that in a new trial it would probably produce an acquittal." *United States v. Bowie,* No. 98–Cr–0008 (D.D.C. Nov. 5, 1998) (order denying motion for a new trial).

## II

▪ Now that the case is on appeal, neither the government nor the defense argues about whether the undisclosed information constitutes newly discovered evidence. Both sides acknowledge that *Brady* and the cases following it provide the governing legal principles. These legal principles are as follows. The Due Process Clause requires a prosecutor to disclose, upon request, information favorable to the accused "that is material to either guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Evidence affecting the credibility of government witnesses is a category of exculpatory information potentially within *Brady*'s disclosure obligation. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). If the government failed to disclose exculpatory, evidence, a defendant is not entitled to have his conviction overturned unless the evidence was "material." *United States v. Bagley,* 473 U.S. 667, 674–78, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Evidence is "material" only if " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.)). A "reasonable probability" means the chances are high enough to undermine confidence in the outcome. *See Kyles,* 514 U.S. at 434, 115 S.Ct. 1555; *Strickler v. Greene,* 527 U.S. 263, ——, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286 (1999).

▪ It is worth pausing here to examine this standard—"reasonable probability," a standard first suggested by Justice Blackmun in his opinion for himself and Justice O'Connor in *Bagley,* endorsed by three other Justices in *Bagley* (*see* 473 U.S. at 685, 105 S.Ct. 3375 (White, J., concurring in part)), explained by Justice Souter in his opinion for the Court in *Kyles,* reaffirmed last term in *Strickler,* and criticized by Justice Souter in his separate opinion in *Strickler, see* 527 U.S. at ——, 119 S.Ct. at 1956 (Souter, J., concurring in part and dissenting in part). What is a "reasonable probability"? Probability is often expressed in terms of percentages, with 100% representing certainty. We know, because the Supreme Court has told us, that a "reasonable probability" can be less

than 50.01%. In other words, to reverse a conviction for a *Brady* violation, it does not have to be more likely than not that the defendant would have been acquitted had the evidence been disclosed. *See Kyles,* 514 U.S. at 434, 115 S.Ct. 1555. We are also sure that a "reasonable probability" is somewhat greater than 1%. How much greater? Enough, the Supreme Court says, to "undermine confidence in the verdict," *id.* at 435, 115 S.Ct. 1555, which may lead us in a circle: one cannot be confident of the outcome when there is a "reasonable" probability that it may be wrong, and a "reasonable" probability is one high enough to undermine confidence in the outcome. Fortunately, we do not need to face the quandary this poses. Our confidence in Bowie's conviction is not shaken by the government's post-trial revelation.

■ The government's nonfeasance is clear enough. The prosecution had a duty, under *Brady,* to provide defense counsel with the evidence about Moses before trial and it failed to carry out its duty. This much the government admits. Its defense of Bowie's conviction proceeds on another ground—that the undisclosed evidence would not have been admissible, and hence could not possibly be "material." The government is right about the admissibility of the evidence. Bowie's counsel could not have introduced evidence from the *Davon Williams* suppression hearing, whether in the form of live witnesses or a transcript. Moses was only under investigation; he had not been convicted of perjury. Rule 608(b) of the Federal Rules of Evidence states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proven by extrinsic evidence." *See* 28 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 6117, at 80 (1993).

Admissibility of extrinsic evidence is one thing, cross-examination of the witness another. Our opinion in *United States v. Cuffie,* 80 F.3d 514, 517 (D.C.Cir.1996),

recognizes as much. Thus, to refute Bowie's contention that the undisclosed information was "material" in the *Brady* sense, it is not enough to show that the transcript of the *Davon Williams* hearing would be inadmissible. The *Brady* information potentially would have opened up a line of cross-examination going to Moses's credibility. To this, the government responds that there is no guarantee that such questioning would be allowed; a trial judge has considerable discretion under Rule 403 of the evidence rules. But certainty is not necessary and we believe that, at a minimum, the judge would have permitted the defense to question Moses about his knowledge of the United States Attorney's investigation. *See United States v. Abel,* 469 U.S. 45, 51, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Even if Moses said he did not know, the trial judge might also have allowed questioning about whether Moses feared that an investigation was in the offing, as well he might have in light of the *Davon Williams* proceedings. Even so, the requisite "reasonable probability" of Bowie's acquittal scarcely follows.

Suppose Moses answered affirmatively when asked questions probing his knowledge or fear of an investigation by the United States Attorney. Would this show the officer's bias? Bias can manifest itself in hostility to one side, but it can also take the form of favoring a litigant. *See United States v. Schaffer,* 183 F.3d 833, 852 (D.C.Cir.1999). Bowie's counsel thinks he could establish bias, because the jury would believe that the officer shaded his testimony in order to curry favor with his investigators. That is one possibility, but not the only one. The jury might think instead that Moses, knowing he was under investigation in another case, would be careful not to worsen his predicament, would be punctilious this time around, would not shade the truth in the slightest respect.

The question remains—how far could cross-examination go in destroying Moses's credibility? And if it were destroyed,

how high is the probability the jury would have acquitted the defendant? We think not very, even if the questioning proceeded like this:

**Defense counsel:** Officer Moses, you testified in the Superior Court in the Davon Williams case, did you not?

**Officer Moses:** Yes.

**Defense counsel:** That was a suppression hearing in January of this year, a proceeding about a search and seizure you carried out?

**Officer Moses:** Yes.

**Defense counsel:** And you swore to tell the truth, the whole truth, and nothing but the truth, just as you did here today?

**Officer Moses:** Yes.

**Defense counsel:** Now the Superior Court judge ruled against the government in the Williams matter?

**Officer Moses:** True.

**Defense counsel:** The judge ruled that way because he did not believe you?

**Prosecutor:** Objection. [Out of the presence of the jury.] Defendant has not established that Moses was untruthful in the prior case. All the judge said on this score was that he found the defense witnesses more credible. This officer does not know what was in the judge's mind. The jury in this case is the sole judge of the credibility of the witness. What a judge in another, totally unrelated proceeding thought about this witness has no bearing on this case. Putting that information before the jury tends to usurp their fact finding function. More than that, it will—in the terms of Rule 403 of the evidence rules—confuse and mislead them.

**Defense counsel:** Your honor, this is crucial to our defense. The judge must have found that Moses lied, otherwise he would have denied the suppression motion. Moses wasn't convicted of perjury, to be sure, but the judge's finding amounts to the same thing.

**The Court:** Objection sustained. The jury will disregard the question. [*See United States v. Lopez,* 944 F.2d 33, 38 (1st Cir.1991) (holding that "the credibility assessment made by the presiding judge at an unrelated trial would have entailed a grave risk that the jury might abrogate its exclusive responsibility to determine the credibility of the testimony given by the officer at appellant's trial"); *see also* FED.R.EVID. 608(a) (providing that opinion evidence attacking the credibility of a witness must be limited to character for untruthfulness).]

**Defense counsel:** Now after the Williams matter ended, you were worried that the U.S. Attorney might investigate you for perjuring yourself in that case?

**Officer Moses:** No, I wasn't worried at all because I told the truth then and I'm telling the truth now.

**Defense counsel:** Well, the fact is that the United States Attorney is now investigating you for perjury?

**Officer Moses:** That's news to me. [The prosecutor in this case told the judge that, in her post-trial conversation with Moses, the officer indicated that he did not know about his name being on the *Lewis* list until after Bowie's conviction.]

**Defense counsel:** Let me show you defense exhibit 1, marked for identification. [A copy of the *Lewis* list.] Officer Moses do you know what the *Lewis* list is?

**Prosecutor:** Objection. [Out of the presence of the jury.] Your honor, the whole purpose of allowing this line of cross-examination is to establish that officer Moses was coloring his testimony for the prosecution, in order to gain favor with our office so that we would drop our investigation of him or exonerate him. I don't agree with the theory, but if he didn't even know of the investigation, the defense theory collapses anyway. So defense counsel should not now be allowed to get before the jury the

fact that we are conducting an investigation.

**Defense counsel:** Judge, I need to probe the truthfulness of this officer's claim that he did not know he was on the list. He's denied knowing that. I should not have to accept that response. The only way I can test his candor is to show him the list and get him to acknowledge that he's on it. Then the jury can decide for itself whether he's telling the truth.

**The Court:** I'll sustain the objection. Those on the list are not normally told they are being investigated. It would be highly unusual for an officer to know this. He said he didn't know. You asked the question and now you must accept the answer.

We do not suggest that cross-examination could have proceeded in no other way, but only that this hypothetical transcript is quite plausible. (At oral argument, Bowie's counsel could offer no other line of questioning.) When the undisclosed *Brady* material consists of impeachment evidence, a court seeking to determine the probable impact of the violation must form some idea about how effectively the evidence could have been used in cross-examination. Of course, it is hard to know what effect such questioning would have had on the jury's assessment of Moses's truthfulness and of Bowie's guilt. In that respect, this case differs markedly from *Cuffie,* in which the government failed to disclose that its critical witness—a co-defendant who had pled guilty—had committed perjury in another proceeding. *See* 80 F.3d at 517–19. Here, the most one can say is that Moses was under investigation for perjury because another judge found opposing witnesses more credible than he.

If the cross-examination would have led the jury simply to discredit Moses's testimony, we still are not convinced that this would give rise to any significant probability of acquittal. In view of the other evidence against the defendant, the jury could acquit only if it took the added step

of believing that the truth must be opposite of what Moses had told them. *See United States v. Zeigler,* 994 F.2d 845, 848–49 (D.C.Cir.1993). Only then could a thinking jury entertain a reasonable doubt of Bowie's guilt. Only then would the jury have before it two opposite versions of what transpired, one from its disbelief of Moses (the defendant possessed no pistol and he did not commit an assault), the other from officer Riggins (the defendant possessed the pistol and committed the assaults). The point here is not simply that Riggins's testimony, standing alone, would be sufficient to sustain the conviction. It would be, but "the materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." *Strickler,* 527 U.S. at ——, 119 S.Ct. at 1952. Rather, the point is that officer Riggins— whose credibility was unimpaired—testified to precisely the same events as Moses and, in all important respects, agreed with him. True, Moses and Riggins disagreed on when the gun fell out of Bowie's pants—during the scuffle, or after they had handcuffed him—but this is of no particular help to the defense. Both officers agreed that Bowie possessed the pistol and that he assaulted and impeded them, which made out Bowie's guilt.

How likely is it that the cross-examination of Moses would have been devastating? Not very, even if the Perry Mason of our day were defending Bowie. Federal Rule of Evidence 801 gave the prosecution a ready means of rehabilitating Moses on redirect: a witness's prior consistent statement is not hearsay when it is "offered to rebut an express or implied charge against the [witness] of recent fabrication or improper influence or motive...." The *Davon Williams* hearing, which led to Moses winding up on the *Lewis* list, concluded on January 14, 1998. Yet by then Moses had already testified in a preliminary hearing in this case, on December 19, 1997, and

before the grand jury on January 6, 1998. His testimony on both of those occasions did not vary in any meaningful way from his testimony at Bowie's March 1998 trial. Knowing this, it is unlikely—too unlikely—that the jury would have believed that Moses slanted his trial testimony because he knew of, or feared, an investigation by the U.S. Attorney regarding his testimony in the *Davon Williams* case. And even if the most effective cross-examination had convinced the jury that Moses was not to be trusted, the unimpeached testimony of officer Riggins would remain to bolster Moses and to convince that, whatever happened in the Superior Court, here the jury could believe beyond any reasonable doubt that Bowie possessed the pistol and that he attacked the two officers.

In sum, Bowie has not shown to our satisfaction that if the evidence wrongfully withheld had been disclosed, there was a reasonable probability the jury would have acquitted him. In coming to this conclusion, we have been mindful of our responsibility to evaluate the impact of the undisclosed evidence not in isolation, but in light of the rest of the trial record. *See Agurs,* 427 U.S. at 112, 96 S.Ct. 2392.

Thus far we have confined our discussion to the trial phase of this case. Bowie faintly suggests, in a caption in his reply brief but not in the body, that we ought to consider as well whether the suppression hearing might have come out the other way. (Moses was the government's only witness at the hearing.) This is too little too late. Too little because it is hardly clear that the *Brady* line of Supreme Court cases applies to suppression hearings. Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is "material either to guilt or to punishment," 373 U.S. at 87, 83 S.Ct. 1194. Too late because Bowie raised the question for the first time in his reply brief and then only obliquely. *See Rollins Environmental Services (NJ), Inc. v. EPA,* 937 F.2d 649, 652 n. 2 (D.C.Cir.1991); FED. R.APP. P.

28(a)(6). We therefore will not decide the issue.

### III

■ We mentioned in the opening a problem with the indictment. It is this. The last two counts charged assault on a police officer while armed with a deadly weapon and cited D.C.CODE §§ 22–505(b) and 22–3202(a)(1). Section 22–505(a) spells out the offense of assaulting or impeding a police officer, which carries a maximum of five years' imprisonment, while § 22–505(b) enhances the penalty to a maximum of ten years if the defendant "uses a deadly or dangerous weapon" in committing the offense. Bowie had a weapon, but even on the officer's version of events he did not get around to using it. The "while armed" language in the indictment comes from § 22–3202(a)(1), a sentencing enhancement provision. A defendant who commits certain offenses while armed will have his sentence increased. The government now concedes that assault on a police officer is not one of the predicate offenses.

Where does this leave us? The government tells us that the citation to § 22–505(b) was a typographical error, that the grand jury meant to refer to § 22–505(a), that Bowie clearly was guilty of two violations of this provision, one relating to officer Moses, the other to officer Riggins. Furthermore, the trial judge never instructed the jury that to convict, it must find that Bowie used his pistol, an instruction § 22–505(b) demanded. But when it came to sentencing, the judge applied § 22–505(b) and meted out a sentence of 3½ to 10 years' imprisonment, a sentence not permissible under § 22–505(a).

Unraveling this tangle yields these consequences. First, an error in an indictment's citation "shall not" be a ground for reversal if the error "did not mislead the defendant to the defendant's prejudice." FED.R.CRIM.P. 7(c)(3). Here, Bowie suffered no prejudice. His defense, presented through his counsel's cross examination of the prosecution witnesses, lost no force on account of the miscitation. And even if

the grand jury intentionally cited § 22–505(b), even if, that is, this was no mere typographical error, the offense laid out in§ 22–505(a) was a lesser included offense, for which Bowie was properly convicted. Assaulting and impeding a police officer under subsection (a) is necessarily included within subsection (b). The wording of § 22–505(b) makes this clear: "Whoever in the commission of any such acts [those described in subsection (a)] uses a deadly or dangerous weapon shall be imprisoned not more than 10 years." The federal rule, like the District of Columbia rule, is that a "defendant may be found guilty of an offense necessarily included in the offense charged," FED. R.CRIM.P. 31(c); D.C.SUPER. CT. R.CRIM. P. 31(c).

 We are never bound to accept the government's confession of error. *Young v. United States,* 315 U.S. 257, 258, 62 S.Ct. 510, 86 L.Ed. 832 (1942) (citing *Parlton v. United States,* 75 F.2d 772 (D.C.Cir. 1935)); *United States v. Pryce,* 938 F.2d 1343, 1351–52 (D.C.Cir.1991) (Randolph, J., concurring). We do so here for obvious reasons. Bowie's sentence on the assault counts will be vacated and the case remanded for resentencing in accordance with § 22–505(a). In pronouncing a new sentence for Bowie's local law offenses, the trial judge will not be bound by federal Sentencing Guidelines. *United States v. Cutchin,* 956 F.2d 1216, 1219 (D.C.Cir. 1992).

### IV

All that remains is Bowie's challenge to his sentence of 120 months' imprisonment on the federal charge. This he opposes on the basis that the trial judge erred in granting upward departures for "possession of a firearm," *see* U.S.S.G. § 2K2.1(b)(5), and "official victim," *see id.* § 3A1.2. As he sees it, the "official victim" enhancement did not apply because the assault did not "creat[e] a substantial risk of serious bodily injury." *Id.* The trial judge found, and the evidence amply supports the finding, that Bowie was attempting to pull the pistol from his waistband. His assault therefore certainly did involve a *risk* of serious bodily injury. The "official victim" adjustment raised Bowie's offense level to 27 (Bowie had two prior felony convictions for crimes of violence), resulting in a sentencing range of 120 to 150 months. Because the maximum sentence for felony gun possession is 120 months—the sentence Bowie received—any challenges to additional enhancements are of no moment. Even so, the trial judge committed no error in making a "possession of a firearm" adjustment. Bowie contends that he did not possess the gun "in connection" with the assault because he did not use the gun during the assault. *See id.* § 2K2.1. But the provision refers not simply to use, but to use and possession of a firearm in connection with another felony offense. *See id.* Bowie's possession of the weapon emboldened him, or appeared to, and his reaching for the weapon showed his intent to use it to facilitate his felony assault on the officers. *See United States v. Sturtevant,* 62 F.3d 33, 34–35 (1st Cir.1995). The connection between the possession of the weapon and the assault was thus established.

*Affirmed in part and vacated and remanded in part.*