Revised March 3, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20198
_____

GREAT PINES WATER CO., INC.,

Plaintiff-Appellee,

versus

LIQUI-BOX CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Southern District of Texas

_____

February 29, 2000

Before DAVIS, JONES, and Magill[1], Circuit Judges

W. EUGENE DAVIS, Circuit Judge:


Appellant Liqui-Box Corporation ("Liqui-Box") challenges the damage portion of the

judgment entered against it following a jury trial.  Liqui-Box's principal argument is that the lost

profit and compensatory damage elements of the lump sum award are not supported by sufficient

evidence.  Our review of the record leads us to agree that Appellee Great Pines Water Company

---

[1]Circuit Judge of the 8th Circuit, sitting by designation.

("Great Pines") failed to produce sufficient evidence to establish the number of Great Pines customers who canceled service due to Liqui-Box's defective products. Because this fact was essential to Great Pines's proof of lost profits and consequential damages, we vacate the judgment and remand for a partial new trial on damages

**I**

In 1986, Robert Hammond, Jr. purchased Great Pines, a bottled water distributor for Ambrosia Water Company in Conroe, Texas. In 1988, Hammond, Jr. moved Great Pines to Houston where he opened a water bottling plant and began producing and distributing his own bottled water.

Liqui-Box manufactures plastic water bottles, water bottle caps, and related equipment to dispense bottled water. This line of Liqui-Box products is sometimes referred to as De-Cap systems. In early 1990, Hammond, Jr. ordered 20 De-Cap systems from Liqui-Box. After inspecting the sample units, Hammond, Jr. began ordering large quantities of De-Cap systems. Over the next three and one-half years, Great Pines provided the De-Cap systems to about fifty-percent of its customers. However, Great Pines experienced severe problems with these systems and determined that the Liqui-Box products were seriously defective. Great Pines found that the De-cap systems constantly malfunctioned by allowing excessive water into the coolers' reservoirs, resulting in repeated overflow leaks. Moreover, Great Pines asserted that the De-Cap systems failed to use a "check valve" — commonly used in the industry — to prevent leaks. Finally, they contended that Liqui-Box's bottle caps included no "tear strip," as was common on other manufacturers' bottles, and thus, could not be removed without using a utility knife, a process that often resulted in water bottle damage and additional leaking.

Liqui-Box sued Great Pines to recover more than $22,698 in unpaid invoices for goods purchased and shipped. In response, Great Pines asserted a claim against Liqui-Box for breach of contract, fraud by misrepresentation, fraud by concealment, breach of warranty, and violation of the Texas Deceptive Trade Practices Act ("DTPA").

At trial, the district court submitted a special verdict, consisting of fourteen interrogatories on liability and damages, to the jury. The jury found in favor of Great Pines on its breach of contract, fraud by misrepresentation, and DTPA claims. Interrogatory No. 8 addressed actual damages for the fraud and breach of contract claims. The court instructed the jury that it could consider four elements of damages under these liability theories: lost profits, consequential damages, costs of removing Liqui-Box's products, and costs of replacing the removed equipment. The court defined lost profits as "the loss of the revenue from the customers that Great Pines lost," less expenses. The court defined consequential damages as "the decline in value of the company due to loss of customers." Thus, the damages for both of these items was based on the number of customers Great Pines lost as a result of Liqui-Box product defects. In response to Interrogatory No. 8, the jury awarded damages of $795,870 on the fraud and breach of contract actions. Although the interrogatory did not ask the jury to specify its award for each damage element, the jury included the following marginal notes next to each of the four damage elements: "$0.00" for removal costs, "$0.00" for replacement costs, "$122,531" for lost profits, and "$677,339" for consequential damages. In answer to a separate interrogatory, the jury awarded Great Pines $1,360,000 in punitive damages based on Liqui-Box's fraudulent misrepresentation.

In response to Interrogatory No. 10, the jury awarded Great Pines $132,000 in actual damages on its DTPA claim, which also included lost profits, consequential damages, removal costs,

3

and replacement costs damage elements. Again, the jury's answer to this interrogatory included marginal notes next to each damage element, indicating "$70,000" for removal costs, "$60,000" for replacement costs, "-0-" for lost profits, and "-0-" for consequential damages.

Great Pines elected to recover on its fraud claim, because it afforded the largest recovery; and the district court entered judgment against Liqui-Box in the amount of $2,373,285, consisting of the $799,870 in actual damages (less an offset credit of $27,477 for Liqui-Box's uncontested unpaid account claim), $1,360,000 in punitive damages, and $240,892 in interest. In this appeal, Liqui-Box does not challenge any of the jury's liability findings. Rather, the sole issues on appeal relate to damages.

## II

Liqui-Box's principal argument on appeal is that Great Pines produced insufficient evidence to support an award for either lost profits or consequential damages. In support of this argument, Liqui-Box focuses on the inadequacy of evidence on a fact critical to an award for either of these elements: the number of customers who canceled Great Pines's water service because of defective Liqui-Box products.

While recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty.[2] While this *reasonably certain evidence* determination is a fact intensive inquiry, opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits

---

[2]See Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 50-51 (Tex. 1998); Holt Atherton Industries, Inc. v. Hiene, 835 S.W.2d 80, 84 (Tex. 1992).

can be ascertained.[3]   In addition, when lost profits are dependent on a plaintiff's lost contracts with customers, Texas law requires that such contracts be proved with reasonable certainty, both as to their existence and their number.[4]

At trial, Great Pines presented three witnesses who testified on the issue of how many customers were lost due to Liqui-Box's conduct.  These included Robert Hammond, Sr., Great Pines's plant manager, Robert Hammond, Jr., Great Pines's majority owner, and David Williams, Great Pines's former Chief Financial Officer.  Robert Hammond, Sr. and Jr. testified that approximately 20,000 De-Cap customers canceled their service with Great Pines during the period in question, February 1990 through August 1994.  However, Great Pines introduced no definitive evidence such as contemporary business records, service cancellation slips, relevant computer entries, or customer complaint lists on the central issue of how many customers canceled due to problems with De-Cap systems.  Though Great Pines did conduct a "customer cancellation" survey in an attempt to show the number of cancellations resulting from Liqui-Box products, the district court excluded the survey as unreliable.

Nevertheless, Hammond, Sr. was allowed to testify that based on his "observations of the plant," discussions with Great Pines's drivers, and conversations with an unknown number of customers who complained, Liqui-Box product dissatisfaction caused about 4,000 cancellations.  Hammond, Sr. readily conceded that he only spoke with a few of these dissatisfied customers, did not see the defective De-Cap systems associated with this estimate, and made no records of De-Cap customer complaints or the reasons why customers discontinued water service.

---

[3]Holt, 835 S.W.2d at 84.

[4] Id. at 85.  See also Szczepanik v. First So. Trust Co., 883 S.W.2d 648, 649-50 (Tex. 1994).

Hammond, Jr. testified that based on similar general observations, he estimated 6,000 - 8,000 cancellations due to Liqui-Box's defective products. Hammond, Jr., like his father, could produce no customer correspondence or records reflecting the customers' reasons for terminating water service.

Finally, David Williams stated that, based on his "investigation" and generally "being at the company," he estimated these problems caused "probably 20 percent" of the 31,524 total[5] customer cancellations. Williams also conceded that he had not spoken to customers concerning their cancellations and made no contemporaneous notes of his impressions during the pertinent time period.

In addition, these Great Pines's witnesses agreed that they had customer cancellations for numerous reasons unrelated to Liqui-Box product failures.[6]

Thus, Great Pines's only evidentiary foundations for these estimates of De-Cap related cancellations are Williams's general impressions from his presence at the plant and the Hammonds' perceptions from their supervision of the plant, limited discussions with drivers, and conversations with a limited but undetermined number of canceling customers.

Two Texas Supreme Court cases are instructive on when evidence presented at trial is legally sufficient to support a recovery of lost profits. In *Szczepanik v. First Southern Trust Co.*, First Southern asserted a claim for lost profits against a former employee who left First Southern, formed a competing company, and lured a number of First Southern investors to follow him and transfer their assets to his new enterprise. However, because First Southern supported its entire damage case on

---

[5]The 31,524 figure relied on by Mr. Williams includes all customer cancellations, including those not using Liqui-Box products.

[6]A number of alternative reasons for customer cancellation were suggested during discovery by the parties' experts, but their testimony was not presented to the jury. The only other reasons we found that were presented to the jury were moving customers and general dissatisfaction with service.

the speculative and conclusory statements of two current employees and failed to present any evidence showing that it had a reasonable expectation of retaining the lured investors, the supreme court ruled that the evidence was uncertain, was not based on objective facts, and failed to provide a basis for accurate calculations. Therefore, the court concluded that the evidence was "legally insufficient to show lost profits."[7]

Likewise, in *Holt Atherton industries, Inc. v. Heine*, the plaintiff sued for lost profits while his bulldozer was out of service as a result of the defendant's conduct, but the court ruled that the plaintiff had failed to introduce enough evidence to support an award for lost profits. The court considered the contractor's conclusory assertions concerning lost contracts and resulting decreased profits inadequate to support its lost profits claim. The court observed that the plaintiff did not offer evidence showing what work was available for the bulldozer during the applicable period, how many contracts had been lost, or how much profit these agreements would have generated. The court concluded that "the bare assertion that *contracts were lost* does not demonstrate a reasonably certain objective determination of lost profits."[8]

Similarly, Great Pines produced no support for its witnesses' estimates of the number of De-Cap related cancellations. Great Pines failed to produce at trial any records showing such critical facts as the number and identity of customers experiencing problems with Liqui-Box products or reasons for service cancellation. The speculative nature of the witnesses' estimates is highlighted by the sharp disagreement among the witnesses themselves on the number of customers lost as a result of Liqui-Box product dissatisfaction. While Hammond, Sr. testified that "about 4,000" customer cancellations

---

[7]Szczepanik, 883 S.W.2d at 650.

[8]Holt, 835 S.W.2d at 85 (emphasis added).

7

were triggered by these problems, Hammond, Jr. stated that the figure was in the "6 to 8,000 range" and Williams approximated that the estimate was "probably" slightly above 6,000. These disparate figures are the product of guesswork by interested parties, and Texas courts have consistently refused to award lost profits on such unprincipled predicates.[9] Lacking business records, facts, figures, and data, the jury in this case had no objective basis on which to evaluate the number of customer cancellations resulting from Liqui-Box product failure. Thus, any lost profit or consequential damage determinations based on this legally insufficient evidence are necessarily arbitrary and unsupportable, and must be set aside.

## III

Liqui-Box argues that, based upon the jury's handwritten marginal notes on the verdict form, we should modify the judgment and award Great Pines the $296,115 awarded on the DTPA action. This figure includes compensation for removal expenses, replacement costs, attorney's fees, and interest, but does not include any damages for lost profits and consequential damages, which, as indicated above, are not adequately supported by the record. However, because we cannot be certain the jury's marginal notes on the special verdict form reflect unanimous findings on the different damage elements, we cannot base our conclusion on this predicate. Federal courts have long held that additional jury notations that are not directly responsive to the jury charge and verdict form are

---

[9]See e.g, Holland v. Hayden, 901 S.W.2d 763, 766 (Tex.Ct.App. 1995) (holding that a plaintiff's unsupported estimate that his business would have quadrupled its daily profit had it not been for the defendant's negligence was "merely speculation").

8

surplusage, and are to be ignored.[10]  The Ninth Circuit case of *Tanno v. S.S. President Madison Ves*

is particularly instructive.  In *Tanno*, the jury added parenthetical comments alongside its damage

award indicating how it performed its damage calculation.  Holding that even if these notations

exposed an implicit contradiction in the jury's award, these notes were "surplusage, and must be

disregarded" because they were not responsive to the special verdict damage question, but were rather

"an attempt to explain the mental processes of the jury;" and were thus, "equivalent to the jurors

testifying as witnesses about their verdict — testimony that would be excluded under Fed. R. Evid.

606(b)."[11]  For the reasons stated above, we decline Liqui-Box's invitation to modify the judgment

based on the jury's unsolicited marginal notes.


## IV


---

[10]See Satler v. U.S., 157 U.S. 277, 279, 15 S. Ct. 616, 617 (1895) (finding that additional jury notations following a determination of guilt were "obviously superfluous" when "striking them from the verdict leaves it, in all respects complete, and responsive to the charge"); U.S. v. Allsworth, 138 F.3d 843, 846 (10th Cir. 1998) (ruling that so long as notations do not cast doubt on the unqualified nature of a general verdict, "unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage");  Tanno v. S.S. President Madison Ves, 830 F.2d 991, 993 (9th Cir. 1987); Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991); U.S. v. D'Angelo, 598 F.2d 1002, 1002-04 (5th Cir. 1979) (denying an "attempt to expose the jury's collective mental process to judicial scrutiny" after a verdict by consideration of a jury note and stating that such attacks have "always been forbidden"); Slotkin v. Citizens Casualty Co. of New York, 614 F.2d 301, 318 (2nd Cir. 1979) (holding that a jury's attempt through extraneous notations to allocate damages between defendants they have found jointly and severally liable was mere "surplusage which may be disregarded"); Cook v. U. S., 379 F.2d 966, 970 (5th Cir. 1967) (ruling that a jury's notations, made in addition to the finding of guilt, indicating a request for leniency is surplusage unless the circumstances strongly suggest that the jury would not have agreed unless the recommendation for leniency was also accepted); Prudential Ins. Co. of America, 68 F.2d 676, 681 (10th Cir. 1934) (ruling that a jury's notations following an award of damages concerning how the award should be divided into installment payments was "surplusage" which may be "disregarded by the court in entering judgment").

[11]Tanno, 830 F.2d at 993.

In light of our above conclusions, we turn finally to the relief that should be granted in this case. We look to *Nissho-Iwai Co. v. Occidental Crude Sales* for guidance on this issue. In that breach of contract case, the district court submitted several damage elements, including lost profits and consequential damages, to the jury on a single damage interrogatory.[12] The jury awarded a lump sum without identifying the individual elements comprising that award. The court held that lost profits were not recoverable for a portion of the relevant time period. Because it was impossible to determine how much of the award the jury had allotted to lost profits — as opposed to the other damage elements — the court could not discern whether the jury had awarded lost profits during the period when none were recoverable. Thus, we vacated the damage award and remanded it for a retrial on damages.

Great Pines elected to accept the damage award on its fraud/breach of contract counts. Unfortunately, the evidence is insufficient to support loss of profits or consequential damages, two key elements of the jury's lump sum award. Because we cannot determine whether the jury awarded sums for lost profits or consequential damages, we must vacate the award and remand for a partial new damage trial. Great Pines had a full opportunity to establish its claim for lost profits and consequential damages; however, having failed to do so, it may not retry its claim for these damages. On remand, Great Pines is limited to seeking an award for costs of removal and replacement of the Liqui-Box equipment and for punitive damages on its fraud/breach of contract counts. If the plaintiff wishes to reconsider its earlier decision and elect to accept the DTPA award instead of the fraud/breach of contract award, we leave it to the discretion of the district court whether plaintiff will be permitted to do so and forego a new damage trial.

_____

[12]729 F.2d 1530, 1547-48 (5th Cir. 1984).

Our disposition of the damage issue discussed above makes it unnecessary for us to consider Appellant's remaining arguments.

**V**

For the reasons discussed above, the judgment of the trial court is vacated and the case is remanded to the district court for a partial retrial on damages consistent with this opinion. However, we leave it to the discretion of the district court whether Great Pines --- if it wishes to do so --- should be permitted to accept the jury's DTPA damage award in lieu of its fraud/breach of contract award and forego a retrial on damages.

VACATED and REMANDED.