GREGG COSTA, Circuit Judge,
dissenting in part:
When a defendant raises an issue for the first time on appeal, any mistake he shows can only be a basis for vacating the conviction if, among other things, the defendant can prove that the error affected his substantial rights. United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This prejudice inquiry—like its counterpart of “harmless error” analysis that just has a different burden with the government having to prove that a preserved error did not impact the result— causes appellate judges to engage in inquiries they do not ordinarily undertake. For example, usually we are not supposed to “weigh the evidence.” But we can, and often must, when deciding the prejudicial effect of a trial error. See, e.g., United States v. Davis, 609 F.3d 663, 684 (5th Cir. 2010); United States v. Rice, 607 F.3d 133, 140 (5th Cir. 2010). Appellate courts also normally do not assess a witness’s credibility, but, in a prejudice inquiry, we have to evaluate the force of impeachment evidence that was not available at trial. Turner v. United States, — U.S. -, 137 S.Ct. 1885, 1894-95, 198 L.Ed.2d 443 (2017); United States v. Bowie, 198 F.3d 905, 910-11 (D.C. Cir. 1999) (contemplating how undisclosed evidence would have been used at trial to impeach a police *218 officer). The length of time it took the jury to reach a verdict does not factor into a challenge to the sufficiency of the evidence, but appellate courts may consider it when evaluating whether an error had an effect on the verdict. Rogers v. United States, 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); Marino v. Vasquez, 812 F.2d 499, 506 (9th Cir. 1987) (citing cases). Why do many of the rules that typically govern appellate review go out the window when a court is engaging in a prejudice or harmlessness inquiry?. Because'the very nature of such an- inquiry requires a reviewing court to do something at odds with its typical function: place itself in the jury box to speculate about how the jury reached its verdict.
If speculation about what the jury thought is allowed in a prejudice analysis, how can we ignore powerful evidence of what the jury actually thought? The jury provided' that with its cross-outs showing that-it found Fairley guilty under the conversion theory for which the instruction was proper. The only plausible meaning of the jury’s crossing out “retaining” and “concealing” is as a response to the court’s unanimity instruction:
All of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and willfully received money, property or thing of value belonging to the United States, or all of you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and willfully concealed money, property or thing of value belonging to the United States, or all of. you must agree that the government proved beyond a reasonable doubt that the defendant knowingly and-willfully retained money, property or thing of value belonging to the United States, or all of you must agree that the govemment proved beyond a reasonable doubt that the defendant knowingly and willfully converted money, property or thing of value belonging to. the United States.

The district court thus read the verdict aloud as a finding of guilt only for the offenses that were not deleted: “knowingly receiving or converting any money.” That verdict is the one to which the jury assented with a show of hands.[1] -
But the majority opinion says we cannot consider- the cross-outs in assessing the impact of the instruction error because “additional jury notations that are not directly responsive to the jury charge and verdict form are surplusage and are to be ignored.” Maj. Op. at 211. Even accepting that principle as stated, it does not bar consideration of the cross-outs given the trial court’s view that they were ,a response to the court’s unanimity instruction. And any rule placing juiy notations off limits is not as firm as the majority opinion suggests; courts typically frame it as a matter of discretion.[2] More fundamentally, *219 the cited cases involve courts refusing, to use sidenotes on the jury form to alter the official verdict, Great Pines Water Co. v. Liqui-Box Corp., 203 F.3d 920, 924 (5th Cir. 2000); see also United States v. Ails-worth, 138 F.3d 843, 846 (10th Cir. 1998). So, for example, if a jury put $120,000 in the damages column of a civil verdict form, a side note showing the jury incorrectly added $80,000 and $50,000 would not override the official award it made. That rule makes sense for a number of reasons. But it is not implicated here because the government is not seeking to use the cross-outs to change the official “guilty” verdict the jury rendered. The question is whether the jury’s clarifying action can be considered in deciding whether that guilty verdict should stand in light of an error in the charge that was not identified until this appeal. The majority opinion cites no case preventing us from considering clear indications from the jury in the context of a prejudice inquiry. In fact, one of the main rationales for excluding extraneous notes in the ordinary situation is that invoking them constitutes an “attempt to expose the jury’s collective mental process to judicial scrutiny.” United States v. D’Angelo, 598 F.2d 1002, 1003 (5th Cir. 1979). Yet that speculation about the “mental processes” of the jury is exactly what a prejudice inquiry requires.
In conducting the prejudice inquiry, I would thus consider the cross-outs which demonstrate that the jury found Fairley guilty under the permissible conversion theory. Indeed, the jury’s responsiveness to the unanimity instruction shows that it might have picked up on some of the errors in the instruction that went unnoticed by counsel and the court. Cf. Plough v. Baltimore & Ohio R. Co., 172 F.2d 396, 399 (2d. Cir. 1949) (L. Hand, C.J., dissenting) (“It is the office.of special verdicts to avoid the effects of misdirections by the judge. They are valuable—very valuable, I believe—just because .when they are used, the charge need not be impeccable.”). I would not undo -the jury’s conscientious work that notifies us that it convicted on the permissible ground of conversion.
Even if we cannot consider the cross-outs, I still do not believe Fairley, has met his plain-error burden of showing that the instruction error affected the verdict. The fear is that the flawed instructions allowed the jury to convict- only oh a finding that Fairley received or retained money from the government with the intent to convert it, but that he never actually got around to converting it (becaüse if he had actually converted the money, that would be a crime). On the facts of this case, there is riot much daylight between these two theories as the majority opinion acknowledges. Maj. Op. at 21Ó. Given that the jury had to find that Fairley intended to convert the public funds, when did he intend for that conversión to occur if'not when the government sent him the money? No theory of post-receipt theft was advanced at trial, which means that Fairley’s intent to convert must have already manifested itself. The thrust of Fairley’s defense was that the money was used for a proper purpose of renovating the properties! That would have defeated ari “intent to convert” element just as much as it would have defeated an element of actual conversion. If anything, Fairley’s defense may have stood a better chance with the erroneous “intent to convert”’ language because he argued that the /disagreement with the government stemmed from different views about what *220 expenses were reimbursable under the HOME program. If Fairley harbored a mistaken but honestly held view about those reimbursements, that could have defeated the intent requirement. So even without consideration of the cross-outs, Fairley has not met his burden of showing that the unpreserved error substantially affected his rights.
All this has said nothing about the final and more demanding condition that must be met before we can vacate a verdict for a reason not presented to the trial court: that the error seriously affected the “fairness, integrity, or public reputation of judicial proceedings.” Olano, 507 U.S. at 736, 113 S.Ct. 1770. The same considerations that prevent Fairley from demonstrating prejudice also influence this assessment of whether the overlooked error resulted in an injustice. So should the fact that the cost of correction, in terms of the burden on the parties, jury, and trial court, is much greater when a verdict is vacated than when a sentence is. Cf. United States v. Sabillon-Umana, 772 F.3d 1328, 1334 (10th Cir. 2014) (Gorsuch, J.) (adopting a presumption that the fourth requirement of plain-error correction is satisfied in sentencing cases in part because the “cost of correction is so small” compared to vacating convictions). It was this concern with upsetting verdicts “for error not brought to the attention of the trial court” that gave rise to the stringent final requirement for plain-error correction in an era— quite different from ours—when sentencing appeals were virtually nonexistent. United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (explaining that the principle against vacating verdicts because of errors not raised at trial “is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issue of law and fact”); see Olano, 507 U.S. at 736, 113 S.Ct. 1770 (recognizing that Atkinson set forth the plain-error standard later codified in 1944 as Federal Rule of Criminal Procedure 52(b)).
I therefore would affirm the guilty verdicts on all three counts.

. The majority opinion’s attempt to come up with other possible reasons for the cross-outs ' is thus at odds with the district court’s understanding. Maj. Op, at 212 n.62. But even if those theories are remote possibilities, they do not help Fairley because he bears the burden of demonstrating prejudice and certainly the most likely reason for the cross-outs is the unanimity requirement.

. See, e.g., Statler v. United States, 157 U.S. 277, 279, 15 S.Ct. 616, 39 L.Ed. 700 (1895) ("Surplusage in a verdict may be rejected, being harmless (emphasis added)); United States v. Ailsworth, 138 F.3d 843, 846 (10th Cir. 1998) (holding that so long as notations do not cast doubt on the unqualified nature of a general verdict, "unnecessary or irrelevant statements in a verdict form may be disregarded as surplusage” (emphasis added)); Slotkin v. Citizens Casualty Co. of New York, 614 F.2d 301, 318 (2d. Cir. 1979) (holding that a jury’s attempt through extraneous notations to allocate damages between defen *219 dants they have found jointly and severally liable was mere "surplusage which may be disregarded” (emphasis added)); Prudential Ins. Co. of America v. Faulkner, 68 F.2d 676, 681 (10th Cir. 1934) (stating that a court rriay disregard a jury's notations following an award of damages concerning how the award should be divided into installment payments).