**UNITED STATES of America, Appellee,**

v.

**David W. SMITH, Appellant.**

Nos. 92–3220, 95–3100.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1996.

Decided March 5, 1996.

Neil H. Jaffee, Assistant Federal Public Defender, Washington, DC, argued the cause, for appellant, with whom A.J. Kramer, Federal Public Defender, and Amy Seidman, Assistant Federal Public Defender, were on the brief.

June M. Jeffries, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman and William E. Lawler, III, Assistant United States Attorneys, were on the brief.

Before: EDWARDS, Chief Judge, WALD and SILBERMAN, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

Appellant David Smith was found guilty by a jury of distribution of five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1988). Subsequently, the District Court sentenced appellant to 360 months in prison.

Appellant now challenges his conviction, claiming that the Government violated its obligation to disclose certain so-called *Brady* material, *i.e.*, impeachment evidence relating to one of its witnesses, Mr. M. As part of a plea agreement with Mr. M, the prosecutor agreed to dismiss two felony cases pending against Mr. M in D.C. Superior Court. The Government acknowledges that it failed to disclose this information to appellant. The Government also admits that it did not disclose evidence relating to Mr. M's psychiatric history. However, the Government argues that the undisclosed information was insufficiently material to justify reversal of appellant's conviction. We disagree.

The Supreme Court has recently made clear that, in the context of a prosecutor's duty to disclose, materiality is not gauged by a sufficiency-of-the-evidence test. *Kyles v. Whitley,* — U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). Under *Kyles,* it makes no difference here whether the testimony of other witnesses might have been sufficient to convict Smith absent Mr. M's testimony. And it makes no difference that other aspects of Mr. M's plea agreement were disclosed to the defense or that defense counsel was able to impeach the witness on other grounds. In short, "a showing of materiality does not require demonstration by a preponderance that disclosure

of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* Rather, the question is whether, in light of the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

During the course of his testimony, Mr. M failed to reveal the full details of his plea bargain with the Government (omitting any reference to the agreement to dismiss the felony charges pending in Superior Court). Had defense counsel been armed with full disclosure regarding Mr. M's plea agreement, the witness could have been subjected to devastating cross-examination regarding his credibility. Given the likely impact of such cross-examination, it can hardly be doubted that the undisclosed information was sufficiently material to meet the threshold laid out in *Kyles*. We also find that the District Court erred by failing to examine Mr. M's medical records in order to determine whether his psychiatric history constituted a relevant subject for impeachment. Without such an examination, there simply was no basis for deciding whether the failure to disclose these records constituted a violation of the Government's discovery obligation. For these reasons, the decision of the District Court denying Smith's motion to vacate his sentence is reversed.

## I. BACKGROUND

### A. Procedural History

On September 10, 1991, a federal grand jury returned a sixteen-count indictment charging appellant Smith and four co-defendants with various drug offenses. The cases against the co-defendants were resolved prior to trial, and Smith was tried alone based on a retyped four-count indictment. This indictment charged Smith with unlawful use of a communication facility and unlawful distribution of five grams or more of cocaine base in connection with two alleged drug sales. After a jury trial, Smith was acquitted on three counts, but convicted on one count of unlawful distribution. On August 26, 1992, the District Court sentenced Smith to 360 months in prison and eight years of supervised release.

### B. The Government's Failure to Disclose

One of the Government witnesses, Mr. M, was originally charged as a co-defendant in the case. However, prior to trial, Mr. M entered into a plea agreement providing that, in return for Mr. M's "substantial assistance" and guilty plea to one count of the original indictment, the prosecution would file a motion recommending a downward departure in sentencing as authorized under section 5K1.1 of the United States Sentencing Guidelines, dismiss all other counts, and agree not to charge Mr. M with any other known nonviolent offenses committed prior to the execution of the agreement. Appendix of Appellant ("A.A.") 57–65. Although these terms were set forth in a letter that was provided to the defense (and entered into evidence at trial for impeachment purposes), the prosecutor failed to disclose that, as a further part of the plea agreement, the Government agreed to dismiss two felony cases pending against Mr. M in D.C. Superior Court. The dismissed cases consisted of a cocaine distribution charge and a Bail Reform Act violation involving a failure to appear at a scheduled court date, which together carried a mandatory minimum sentence of six years and a potential maximum sentence of 35 years. There is no indication, either in the record or in the parties' briefs, as to why the dismissal of the Superior Court charges was not disclosed to the defense or why this part of the deal was omitted from the written plea agreement.

In addition, at the time of his guilty plea, which was entered approximately six weeks prior to appellant's trial, Mr. M informed the court that he had previously been hospitalized for "chronic depression" for approximately 18 months and that, after he was discharged in November 1989, he attended a mental health clinic for an additional four months. A.A. 72–73. It is undisputed that the prosecution did not provide appellant with any information relating to Mr. M's psychiatric history.

After the trial, appellant filed a motion pursuant to 28 U.S.C. § 2255 (1988) to vacate, set aside, or correct his sentence. Ap-

pellant argued that the prosecution's failure to disclose the information concerning Mr. M had deprived defense counsel of material evidence that could have been used to impeach Mr. M's credibility, and that, as a result, appellant's right to a fair trial had been violated.

The District Court denied the motion. The court ruled that, although the dismissal of Mr. M's pending Superior Court cases should have been disclosed to the defense, the nondisclosure did not prevent Smith from receiving a fair trial. Further, the court held that appellant had failed to establish that Mr. M's psychiatric history was relevant and that, in any event, such evidence would have been merely "cumulative" as to his lack of credibility. The court concluded that, notwithstanding the nondisclosures, the defense had adequately established that Mr. M was a "suspect witness." Therefore, the court ruled that the suppressed impeachment evidence was not material. *United States v. Smith*, Crim. Action No. 91–527, slip op. at 1–6 (D.D.C. June 28, 1995), *reprinted in* A.A. 145–50.

## II. ANALYSIS

■■■ The prosecution has an affirmative duty to disclose material evidence favorable to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Further, it is well-settled that this disclosure obligation includes evidence that could be used to impeach the credibility of a witness. *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). In this case, it is undisputed that the Government failed to disclose information that could have been used to impeach Mr. M. Thus, the only remaining issue is whether the information was sufficiently "material" to establish a *Brady* violation.

In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court held that favorable evidence is material, and constitutional error results from its suppression by the Government, " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.' " *Kyles*, —— U.S. at ——, 115 S.Ct. at 1565 (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (opinion of Blackmun, J.)). In *Kyles*, the Court recently elaborated on the meaning of materiality under *Bagley*, stressing that a reviewing court must focus on the fairness of the trial the defendant actually received rather than on whether a different result would have occurred had the undisclosed evidence been revealed:

> [A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.... *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Id.* at ——, 115 S.Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381) (citations omitted). *Kyles* also made it clear that, "once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless-error review." *Id.* As the Court pointed out, no *Bagley* error can ever be harmless because a reasonable probability of a different result "necessarily entails the conclusion that the suppression must have had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotation omitted). This court's recent decision in *United States v. Lloyd*, 71 F.3d 408, 411 (D.C.Cir.1995), adheres to this line of analysis.

Purporting to apply this test, the Government first argues that, because Mr. M's testimony was merely corroborative, the failure to disclose impeachment information could not have been material. According to the Government, the testimony of other witnesses, as well as the physical evidence presented at trial, would have been sufficient to

convict Smith, even if the jury completely discounted Mr. M's testimony. Therefore, the Government claims that any additional impeachment material would have been irrelevant to the jury's ultimate verdict. We reject this argument.

■ As an initial matter, we reject the suggestion that, absent Mr. M's testimony, the result would have been the same. There is no way to know this; in fact, the suggestion seems counter-intuitive, given that this was a close case in which the jury acquitted Smith on three of the four counts. More importantly, however, the Government's argument completely misconstrues the relevant inquiry. As the Court made clear in *Kyles,* the test for materiality is *not* a sufficiency-of-the-evidence test. "A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Kyles,* —— U.S. at ——, 115 S.Ct. at 1566. Indeed, a sufficiency-of-the-evidence test would require appellate courts to usurp the function of the jury, for judges would be forced to *guess,* based on a cold record, how the jury might have weighed the remaining evidence, standing alone, in a hypothetical error-free trial. Because such an inquiry is inherently unreliable, *Kyles* rightly focuses attention instead on the potential impact the undisclosed evidence might have had on the fairness of the proceedings.[1] Thus, the amount of additional evidence indicating guilt is not dispositive of our inquiry. Instead, we must decide whether the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict.

*A. The Dismissed Superior Court Charges*

When Mr. M pleaded guilty to one count of the indictment against him, ten other counts were dismissed. These dismissed counts were disclosed to the defense. The Government rightly points out that defense counsel was therefore able to cross-examine the witness regarding these dismissed counts and establish a possible motivation for lying. Indeed, the defense attempted to bring out during cross-examination that Mr. M was testifying in part because he hoped for leniency in sentencing. Trial Tr. (May 5, 1992, a.m. session) at 74–75. At closing argument, defense counsel referred to the witness as "a crackhead," "a drug broker," and "a five-time convicted criminal," and argued that Mr. M was biased because he was "facing a substantial sentence … for selling almost 60 grams of crack, or 50 grams of crack, whatever it is. And he told you, he faces almost ten years in jail." Trial Tr. (May 5, 1992, p.m. session) at 20–21.

■ The Government contends that, given this record, further cross-examination on Mr. M's credibility and bias based on the dismissal of the two Superior Court convictions would have been merely cumulative. However, "the fact that other impeachment evidence was available to defense counsel does not render additional impeachment evidence immaterial." *United States v. O'Conner,* 64 F.3d 355, 359 (8th Cir.1995) (citing *Napue v. Illinois,* 360 U.S. 264, 270, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). Thus, we must look not to the ways defense counsel was able to impeach Mr. M, but to the ways in which the witness' testimony was allowed to stand unchallenged.[2]

---

1. Likewise, when appellate courts consider whether trial error is harmless, the Supreme Court has instructed us to refrain from analyzing the overall weight of the evidence, and instead look to the potential affect the error might have had on the jury. *See O'Neal v. McAninch,* —— U.S. ——, —— – ——, 115 S.Ct. 992, 994–95, 130 L.Ed.2d 947 (1995) (The Court ruled that the proper measure of harmlessness is whether the error "had substantial and injurious effect or influence in determining the jury's verdict," *not* whether the record evidence is sufficient absent the error to warrant a guilty verdict.).

2. The Government attempts to rely on this court's statement in *United States v. Derr,* 990 F.2d 1330 (D.C.Cir.1993), that "an incremental amount of impeachment evidence on an already compromised witness does not create a 'reasonable probability' [of a different result]." *Id.* at 1336. An examination of the discussion preceding this statement, however, reveals that the court relied on the fact that the undisclosed evidence at issue in that case would have been inadmissible hearsay and therefore of limited value to the defense. Moreover, *Derr* was decided prior to the Supreme Court's decision in *Kyles,* which explicated *Bagley*'s "reasonable probability" standard.

During cross-examination, Mr. M was asked if he expected "favors from the government" in exchange for his testimony. Mr. M responded, "No I don't—only what is in [the plea] letter." Trial Tr. (May 5, 1992, morning session) at 73. Mr. M went on to say that he had decided to become a witness in this case "[b]ecause I just want to start fresh and get on with my life." *Id.* at 74. Defense counsel then asked again whether Mr. M "expect[ed] any favors at all from [the prosecutor] other than what is stated in [the plea] letter," to which Mr. M responded, "That is right, just what is stated in the letter." *Id.* at 74–75.

 The Government denies that the witness was intentionally concealing the agreement to dismiss the Superior Court charges, arguing that Mr. M might have mistakenly believed that the written letter did in fact include these charges in its provisions. However, the witness' good faith does not render the *Brady* violation any less material. We must assume that, had the Government disclosed the information regarding the dismissed Superior Court charges, the witness would still have testified exactly as he did. Armed with full disclosure, defense counsel could have pursued devastating cross-examination, challenging Mr. M's assertion that he was testifying only to "get a fresh start" and suggesting that the witness might have deliberately concealed the other favors from the Government that were not in the written plea agreement. The potential impact of such a cross-examination is sufficient to undermine confidence in the jury's verdict, thereby satisfying the threshold for materiality laid out in *Kyles*. Therefore, we find that a new trial is warranted.

### B. Prior Medical History

 We also find that the District Court erred in not reviewing Mr. M's medical records before ruling that such information was immaterial. Federal courts often permit cross-examination regarding a witness' previous mental history, and may even allow extrinsic evidence such as hospital records to be used for impeachment purposes. *See*

JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 607[04], at 66 & n. 36. Mental records can be material as impeachment evidence because they can cast doubt on the accuracy of a witness' testimony. *See, e.g., East v. Scott,* 55 F.3d 996, 1003 (5th Cir. 1995).

 Of course, a history of mental illness is not *necessarily* admissible as impeachment evidence. For example, the First Circuit has ruled that mental instability is "relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness ... that dramatically impaired her ability to perceive and tell the truth." *United States v. Butt,* 955 F.2d 77, 82–83 (1st Cir.1992). The test in *Butt* may be too narrow a rule of admissibility, so we do not embrace the position of the First Circuit. Rather, it is enough to say that we agree that evidence regarding mental illness is relevant only when it may reasonably cast doubt on the ability or willingness of a witness to tell the truth. The soundest course, therefore, is for the District Court to consider the medical history of the specific witness in question so as to render an informed decision regarding the relevance of that history.

In this case, the record indicates that Mr. M was hospitalized for chronic depression for approximately 18 months in 1988–89; and that he attended a mental health clinic for an additional four months thereafter. The length of Mr. M's hospitalization suggests a potentially serious mental disorder. Thus, it was incumbent on the District Court to review the medical records to determine whether the witness' prior condition was relevant for impeachment purposes.

The Government argues that a patient suffering from depression would not necessarily be subject to symptoms that might cast doubt on his testimony as a witness. However, as counsel acknowledged at oral argument, this is not a medically verifiable rule that can be asserted with confidence, given the widely varying forms of depression and vast array of accompanying symptoms.[3] The

---

3. Indeed, a person who suffers from a "Major

Depressive Disorder" that is classified as "Severe

simple point is that, without viewing the medical records, there was no way for the District Court to know the extent of Mr. M's symptoms. The medical records might have indicated a relevant, ongoing problem—and this was not a remote possibility, because the events about which Mr. M testified took place only two years after his release from the hospital. In any event, we cannot say, without further evidence, that the undisclosed information was immaterial. Therefore, on remand, Mr. M's medical records should be disclosed to the defense, or at least reviewed by the District Court *in camera* to determine their potential relevance.

### III. CONCLUSION

The prosecutor's obligation to disclose material information to the defense is a fundamental component of the guarantee that criminal defendants receive fair trials. Thus, we do not lightly excuse *Brady* violations. Because the Government's nondisclosures in this case significantly impaired defense counsel's ability to impeach the credibility of a principal prosecution witness, we reverse and remand for a new trial.

With Psychotic Features" could well experience delusions or hallucinations. *See* AMERICAN PSYCHI-ATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) 376–77.