Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

No. 01–3011

**September Term, 2002**
95cr00297–02

Filed On: April 25, 2003

UNITED STATES OF AMERICA,
APPELLEE

v.

ROBERT GALE,
APPELLANT

————

**BEFORE**: RANDOLPH and ROGERS, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

## O R D E R

Upon consideration of appellant's petition for rehearing
filed February 21, 2003, and the opposition thereto, it is

**ORDERED** that the petition be denied.

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

A separate statement of *Senior Circuit Judge* WILLIAMS, explaining the denial of rehearing, in which *Circuit Judge* RANDOLPH joins, is attached.

*Circuit Judge* ROGERS would grant the petition for rehearing.

A separate statement of *Circuit Judge* ROGERS dissenting from the denial of rehearing is also attached.

1

WILLIAMS, *Senior Circuit Judge*, with whom RANDOLPH, *Circuit Judge*, joins: Petitioning for rehearing, Gale calls our attention to a sentence in *United States v. Smith*, 77 F.3d 510 (D.C. Cir. 1996). The government there had failed to disclose some powerful impeachment evidence against a key government witness, including the government's agreement to dismiss certain D.C. Superior Court felony charges. The witness, in turn, testified falsely, omitting this agreement from his testimony about potential benefits from cooperation.

Finding a *Brady* violation that required a new trial, we said, "We must assume that, had the government disclosed the information regarding the dismissed Superior Court charges, the witness would have testified exactly as he did." 77 F.3d at 516. Gale argues that this line in *Smith* precludes us from inferring that if Brown's prior perjuries had been disclosed to the defense here, the government would have simply used another expert witness. See 314 F.3d at 4–5.

But in *Smith* the sentence now pinpointed by Gale appeared in the context of a government claim that the witness's false statement was unintentional. Responding to the claim of mistake, the court stated that a witness's good faith is irrelevant to materiality under *Brady*, and that the court would assume that his testimony would have remained unchanged. But there is nothing in *Smith* to suggest that the government was arguing that disclosure would have been accompanied by a change in government strategy. So far as appears, we spoke of the necessity of assuming unchanging testimony simply in response to the thought that the witness, having acted unintentionally (rather than being a case-hardened perjurer), would likely have come clean.

Gale's broader construction of *Smith* would render it inconsistent with our approach in *United States v. Bowie*, 198 F.3d 905, 909–12 (D.C. Cir. 1999), where we evaluated the effects of disclosure dynamically, taking into account readily foreseeable changes in prosecution strategy and witness testimony. There it seemed obvious to us that if the defense used the impeachment evidence that had been withheld in violation of *Brady*, the prosecution would have responded with rehabilitating testimony, rendering the *Brady* violation immaterial. 198 F.3d at 911–12. Here the obviously foreseeable change in

strategy is replacement of an easily replaced witness rather than addition of new testimony, but we see no distinction. Gale's proposed reading of *Smith* would preclude consideration of such changes and is therefore incorrect in light of *Bowie*.

Also, Gale argues that we were required to perform the materiality inquiry "in light of the trial that occurred, not some hypothetical trial that might have taken place." Petition at 10. But the materiality inquiry plainly requires us to hypothesize about what "would have" occurred in the event of disclosure. *Smith*, 77 F.3d at 514 (quoting *United States v. Bagley*, 473 U.S. 667 (1985)). Gale does not really deny that some hypothesizing is required, but rather insists that we consider only changes the defense would have made, not those of the government. Petition at 9–10.

We reject this "defense-only" view of the materiality test. The test requires us to consider whether, with disclosure by the government, there would be "a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citations omitted). That standard plainly requires analysis of "*reasonable*" alternatives. Gale asked us to consider one alternative: the government discloses and then plunges doggedly ahead. The government proposed another: the government discloses and makes a rather obvious strategic adjustment, picking a different, untainted expert. His alternative is unreasonable, the government's reasonable. *Kyles* requires that we pick the latter. Contrary to the claim of his petition, there is no issue *whether* to consider an alternative scenario; the only issue is whether we should focus on reasonable alternatives, and *Kyles* says we should.

1

ROGERS, *Circuit Judge*: I would grant rehearing to eliminate any suggestion in *United States v. Gale*, 314 F.3d 1 (D.C. Cir. 2003), that this circuit has adopted a rule of "readily replaceable" witnesses as part of its materiality analysis of *Brady* violations under *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Petition for Rehearing and Rehearing En Banc at 3.

Under *Kyles*, "[a] 'reasonable probability' of different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Suffice it to say, the court in *United States v. Smith*, 77 F.3d 511 (D.C. Cir. 1996), explained, "we must decide whether the undisclosed information could have substantially affected the efforts of defense counsel to impeach the witness, thereby calling into question the fairness of the ultimate verdict." 77 F.3d at 515. Thus, in *United States v. Bowie*, 198 F.3d 905, 909–12 (D.C. Cir. 1999), the court considered how the trial might have proceeded had there been no *Brady* violation and concluded that because Federal Rule of Evidence 801 afforded the government a means to rehabilitate the fact-witness's credibility, the defendant had failed to show that he was denied a fair trial. At no point, however, did the court in *Bowie* rely on a revision of either the trial witnesses who testified or the testimony that those witnesses provided. That is consistent with the admonition in *Smith* that "[w]e must assume that, had the Government disclosed the information . . ., the witness would still have testified exactly as he did." 77 F.3d at 516. It is also consistent with *Kyles*, which at no point suggests that the reviewing court should focus other than on the trial that actually happened. 514 U.S. at 433–34. Accordingly, discussion of how the government might have proceeded at a new trial with a different expert, much less the good faith of the prosecutor and testimony in another case, is besides the point.