Filed 10/20/14  P. v. Johnson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B245924 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA056784) |
| v. | |
| CLARENCE B. JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed as modified.

Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Clarence B. Johnson appeals from the judgment on his conviction of criminal threats. On appeal he raises four separate grounds. First, appellant argues it was an abuse of discretion for the trial court to restrict defense counsel's inquiry into an eyewitness's history of self-cutting as a basis of attacking the witness's credibility. Second, appellant asserts the trial court erred in limiting defense counsel's cross-examination of the alleged victim's prior felony conviction for vandalism. Third, appellant contends it was prosecutorial misconduct for the prosecutor to repeatedly and improperly use leading questions during his direct examination of the alleged victim. Finally, appellant asserts the judgment could not order compliance with a protective order because such an order was outside the court's jurisdiction. As we shall explain, only the claim with respect to the protective order has merit. Consequently, we strike the protective order and affirm the modified judgment. We order the abstract of judgment to be corrected accordingly.

## FACTUAL BACKGROUND

### I. Events in Appellant's Apartment

On July 10, 2012, at around 3:00 a.m., Adam Christenson placed a 9-1-1 call after hearing what sounded like people "screaming for their lives" in the apartment next door. Clarence B. Johnson (appellant) and Traci Tidmore Allen (Allen) were together in the apartment next to Christenson's. They had been dating for a week. Another women, also named Traci,[1] was at the apartment with appellant and Allen. Earlier that night, at around 9:00 p.m., the three of them were using crack cocaine.

At around 3:00 a.m., an altercation occurred between Allen and appellant. Allen was in bed. Appellant told Allen to turn around and face the wall. When Allen asked why, appellant jumped on top of her and began to hit her. Appellant swore at Allen and said he would kill her. Allen said she already had a brother in prison and appellant replied that Allen might not live to see him again. Appellant told Traci to get a knife and

---

[1]    Traci did not testify at the preliminary hearing or trial.

said he would cut Allen's throat. This knife was under appellant's pillow on the bed. While appellant was on top of Allen, the knife fell off the bed and became stuck between the bed and the wall.

After the knife fell, Allen got up from the bed. At this time, appellant's godson, Josh,[2] entered the apartment. Allen attempted to leave, but appellant told Josh to not let Allen out. Josh held the door and refused to let Allen leave. Allen screamed that she wanted to be let out of the apartment.

Allen ran to the window and saw Lu'Shown Malveaux (Malveaux)[3] drive up in Allen's car. Allen banged on the window and yelled for help. Malveaux testified that she heard Allen yell, "I want to go home. I want to go home. Help me. He said he's going to kill me. There's a knife under the pillow."

## II.     Events in Allen's Car Leading to Appellant's Arrest

Allen testified Josh let her out of the apartment and appellant followed her outside. Allen got into the passenger seat of the car. Appellant stood outside the car on the driver's side where the window was open. Allen thought appellant would take the keys, so she grabbed them out of the ignition and ran out of the car. Appellant chased her down the alley. Appellant caught up with Allen and grabbed her hair. Allen fell and the two "tussled" over the keys. He was on top of her, swearing and threatening to kill her.

Allen threw the keys towards Malveaux. Appellant stood up. Allen retrieved the keys and ran to the car. She got into the driver's seat. Malveaux moved to the back seat. Appellant got into the passenger's seat. Appellant made threatening statements to Allen while she drove. She asked him to get out of the car, but he refused. She drove toward Malveaux's house. While she drove, appellant was hitting her in the face with the back of his hand. While driving to Malveaux's house, Allen saw a police car and began flashing her lights. She told them she needed help; they directed her to pullover.

---

[2]     Josh did not testify at the preliminary hearing or the trial.

[3]     Malveaux is Allen's close friend and was returning Allen's car to her that night.

3

Allen told Deputy Burchett and Deputy Klumpf that appellant was "beating" her. Appellant told the deputies that he was arguing with Allen because she had been "hitting on" his son. Appellant said he never threatened Allen. The deputies arrested appellant.

Appellant was charged with three crimes: criminal threats, in violation of Penal Code section 422; false imprisonment, in violation of Penal Code section 236; and assault by means likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(4).

### III.    Procedural Background

At trial, appellant was convicted of making unlawful threats in violation of Penal Code section 422. He was acquitted of false imprisonment and assault with force likely to produce great bodily injury. Appellant timely filed this appeal.

### *DISCUSSION*

### I.    Abuse of Discretion Standard

With respect to a trial court's rulings under Evidence Code sections 350 and 352, this court applies the abuse of discretion standard. (*People v. Duff* (2014) 58 Cal.4th 527, 558; *People v. Montes* (2014) 58 Cal. 4th 809, 869.) The California Supreme court has established, "It is axiomatic that a court has wide discretion to exclude evidence as substantially more prejudicial than probative. Its ruling therefore will be sustained on review unless it falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.) A trial court's admissibility determination may not be reversed on appeal unless the defendant shows that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner which resulted in a manifest miscarriage of justice. (Evid. Code, § 353, subd. (b); *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

### II.    The Trial Court Did Not Err in Excluding Evidence of Malveaux's History of Self-Cutting

Appellant asserts the trial court abused its discretion by restricting defense counsel from inquiring into Malveaux's history of self-cutting. Appellant argues self-cutting is a condition that commonly coexists with mental health disorders. Appellant believes the

4

jury relied heavily on Malveaux's testimony to corroborate Allen's account of the events and subsequently convict appellant. Appellant suggests that had the jury known of Malveaux's self-cutting and mental health history, the jury would have questioned her credibility as a reliable eyewitness and the trial's outcome would have been different.

## A. *The Trial Court's Evidence Code Section 402 Hearing*

During the trial, the prosecution notified the court and defense counsel that Malveaux had scars from cutting herself when she was younger.[4] Defense counsel requested the court's permission to cross-examine the witness on her mental health issues. The trial court ordered a hearing pursuant to Evidence Code section 402.[5] The court observed, "I am not a mental health expert. However, I think in layman's terms, if a person is bipolar or schizophrenic, I think any layman would know that may affect a person's perception and ability to recall. [¶] However, cutting is something different. Cutting is a physical manifestation that somebody does to their body in reaction to something, and that something is pure speculation on my part and yours because we don't know. I can't even say whether or not a person cuts as a result of any type of mental health issue. A person may cut because they are frustrated. They may cut because they are in a group home and they're lonely. I don't know. [¶] So we can have a 402 with her, but . . . I don't think it's relevant. But when she gets here we will do a quick hearing."

At the section 402 hearing, Malveaux stated she told the prosecutor and two deputies she used to cut herself when she lived in a group home. She testified that she had seen a psychiatrist earlier in the year and was diagnosed with some kind of mental

---

[4] Malveaux was 19 years old at the time of the trial.

[5] "The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests." (Evid. Code, § 402, subd. (b).)

5

illness.  When asked which mental illnesses she had, Malveaux responded that she did not remember and would have to look at her records.

The court then interjected: "Let me stop for one second here.  [¶]  You know, I don't want to go into your own personal private medical history, but I think the question is this.  Do you have any type of mental disease or disorder that would affect your ability to perceive or recall anything that happened?

"[Malveaux]:  No.

"The Court:  So your cutting is a physical manifestation of some kind of mental trauma or as a result of things that you have gone through in your life?

"[Malveaux]:  Yes.

"The Court:  And is that what you were treated for?

"[Malveaux]:  Yes."

Defense counsel then asked Malveaux if she was currently seeing a doctor on a regular basis; whether she was on medication; whether she was on medication in July; and whether she has ever been diagnosed with "something like bipolar schizophrenia." Malveaux said "No" to each of these questions.  The court ruled "the fact that [Malveaux] may have engaged in cutting in the past is irrelevant."

## B.  *Analysis*

We assume from the record that the trial court excluded evidence of Malveaux's self-cutting on the basis of Evidence Code section 350.[6]  Under Evidence Code section 350, "[n]o evidence is admissible except relevant evidence."  (Evid. Code, § 350.) Evidence Code section 210 defines relevant evidence as evidence relevant to the

---

[6]      When the prosecutor first informed the court of Malveaux's history of self-cutting, he stated, "the People's position is that it is just not relevant."  After the Evidence Code section 402 hearing, the trial court concluded, "the fact that [Malveaux] may have engaged in cutting in the past is irrelevant and we are not going to get into that."

credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Witnesses cannot "be examined on matters that are irrelevant to the issues in the case." (*People v. Mayfield* (1997) 14 Cal.4th 668, 755.) We review trial court decisions regarding Evidence Code section 350 for abuse of discretion. (*People v. Duff*, *supra*, 58 Cal.4th at p. 558.)

Under Evidence Code section 780, the court or jury may consider in determining a witness's credibility any matter that has any tendency to prove or disprove the truthfulness of her testimony at trial. (Evid. Code, § 780.) This includes the extent of the witness's ability to perceive, to recollect, or to communicate any matter about which she testifies. (Evid. Code, § 780, subd. (c).)

It is not contested that a witness's mental health can affect her ability to perceive or recall events. Appellant relies on *People v. Newton* to argue psychiatric testimony should be admitted "liberally in favor of the defense." (*People v. Newton* (1966) 244 Cal.App.2d 82.) However, this does not mean that any and all evidence of a witness's mental health history is subject to scrutiny at trial. In *People v. Anderson* (2001) 25 Cal.4th 543, the California Supreme Court recognized, "It is a fact of modern life that many people experience emotional problems, undergo therapy, and take medications for their conditions. 'A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem.'" (*Id.* at p. 579.)[7]

---

[7] The federal courts apply similar standards to the admission of mental health evidence. For example, in *United States v. Moore* (1st Cir. 1991) 923 F.2d 910, the First Circuit held the district court "has broad discretionary authority to prohibit cross-examination," including the extent to which it allows examination about a witness's condition of mental instability. (*Id.* at p. 913.) In *United States v. Bari* (2d Cir. 1984) 750 F.2d 1169, the Second Circuit found the trial court did not abuse its discretion by restricting cross-examination on a witness's prior hospitalization for schizophrenia. (*Id.* at pp. 1178-1179.) In *United States v. Smith* (D.C. Cir. 1996) 77 F.3d 511, the D.C. Circuit held "a history of mental illness is not necessarily admissible as impeachment evidence." (*Id.* at p. 516.)

The California Supreme Court has determined that "a witness may be cross-examined on that subject, if such illness affects the witness's ability to perceive, recall or describe the events in question." (*People v. Gurule* (2002) 28 Cal.4th 557, 591-592; *People v. Herring* (2005) 36 Cal.4th 96, 116-117; *People v. Anderson, supra,* 25 Cal.4th at pp. 608-609 (conc. opn. of Kennard, J.).) Here, the trial court did not arbitrarily restrict defense counsel from inquiring into Malveaux's history of self-cutting. First, the nature of self-cutting does not necessarily reflect a diminished or questionable ability to perceive and recall events. Courts distinguish "a mental illness that causes hallucinations or delusions [as] generally more probative of credibility than a condition causing only depression, irritability, impulsivity, or anxiety." (*People v. Anderson, supra,* 25 Cal.4th at p. 609 (Kennard, J., concurring).) For example, "[a] psychotic's veracity may be impaired by lack of capacity to observe, correlate or recollect actual events. A paranoid person may interpret a reality skewed by suspicions, antipathies or fantasies. A schizophrenic may have difficulty distinguishing fact from fantasy and may have his memory distorted by delusions, hallucinations and paranoid thinking. A paranoid schizophrenic, though he may appear normal and his judgment on matters outside his delusional system may remain intact, may harbor delusions of grandeur or persecution that grossly distort his reactions to events." (*United States v. Lindstrom* (11th Cir. 1983) 698 F.2d 1154, 1160.) Defense counsel asked Malveaux whether she has ever been diagnosed with "something like bipolar schizophrenia." Malveaux said she had not.

Malveaux's history of self-cutting as an adolescent may indicate she had depression or anxiety, or as the court explained, the self-cutting could have been entirely unrelated to any mental health disorders. The fact that a witness has depression or anxiety is not enough to question her credibility and capacity to perceive and recall events. (*People v. Anderson*, *supra*, 25 Cal.4th at p. 579; see also *United States v. Butt* (1st Cir. 1992) 955 F.2d 77, 82.) On appeal, appellant relies on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) to argue self-cutting is a condition that commonly co-exists with certain mental health disorders. However, appellant did not raise this argument at the Evidence Code section

402 hearing. Even if we assume this argument is not waived on appeal, appellant did not provide evidence or argue that self-cutting affects a witness's perceptions, memory or ability to communicate.

In *Anderson*, the fact that the witness suffered "mental anguish" did not, standing alone, require the trial court to permit defense counsel to inquire into her mental health history in front of the jury. (See *People v. Anderson*, *supra*, 25 Cal.4th at pp. 578-579.) Here, Malveaux testified that she did not have bipolar disorder or schizophrenia. The court asked Malveaux if she had any disorders that affected her ability to perceive and recall events. Malveaux said, "No." On appeal, appellant contends that it is "inefficient to ask the subject of an inquiry whether he or she has a mental condition that inhibits the ability to perceive and recall facts." However, it was appellant's burden to raise and argue this issue during the Evidence Code section 402 hearing. He did not. Moreover, in *People v. Pack* (1988) 201 Cal.App.3d 679, defense counsel sought to inquire about a witness's records to see if there is a material issue with credibility. (*Id*. at p. 686, disapproved on other grounds by *People v. Hammon* (1997) 14 Cal.4th 1117.) The court held this minimal showing that the witness "received treatment for *some* mental health problem" is not enough to justify an inquiry into a witness's private mental health records. (*Ibid*.)

Furthermore, courts find evidence of "mental instability relevant to credibility" when "during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth." (*United States v. Butt, supra,* 955 F.2d at pp. 82-83.) There is nothing in the record to indicate that Malveaux had such a disposition when she witnessed appellant threaten Allen or when she testified at trial. Moreover, appellant did not make such a showing or raise this argument at trial during the section 402 hearing.

Finally, in conducting the 402 hearing, the court also assessed Malveaux's mental soundness during her testimony. The record affirmatively shows the trial court balanced

9

the probative value of Malveaux's past of self-cutting with the prejudicial effect such evidence could have had on the jury. We conclude there was no abuse of discretion.

### III. The Trial Court Did Not Err in Limiting Defense Counsel's Cross-Examination of Allen's Prior Felony Conviction

#### A. *Allen's Prior Drug Use and Mental Health History*

In July 2012, Allen was addicted to crack cocaine. Six hours before the July 10th incident between Allen and appellant, Allen smoked crack. At trial, Allen admitted that when she smoked crack, she was prone to having hallucinations or delusions, including paranoia. Allen testified she was not hallucinating on July 10, 2012.

Before September 2009, Allen was diagnosed with bipolar disorder. In 2012, she was taking Prozac but ran out of the medication a couple of days before the incident. At the time of the trial, Allen was sober and receiving treatment for her bipolar disorder, depression and substance addiction.

#### B. *Allen's Prior Felony Conviction and The Trial Court's Evidence Code section 352 Ruling*

In 2009, Allen was convicted of felony vandalism for damage to her mother's house. At trial, defense counsel wanted to question Allen on five areas of underlying facts concerning the vandalism conviction: (1) Allen broke into the house; (2) one of Allen's siblings had a restraining order against her; (3) Allen locked all the doors, preventing anyone else from entering; (4) when a detective tried to talk to Allen, Allen said she wanted to talk to a "real detective," not an actor; and (5) Allen told the police her cousin was going to shoot her. The trial court allowed defense counsel to inquire as to some of the facts but not the five specific areas defense counsel wanted to address.

The court explained, "Typically, when it comes to impeaching a witness based on a prior felony conviction involving moral turpitude, the witness is confronted with the case number, the date of conviction and asked, were you convicted of a violation of felony vandalism in violation of 594(a) of the Penal Code? Yes or no. That's typically the extent of the testimony that's allowed to impeach a witness."

10

Because the trial court allowed the prosecutor to inquire into some of the underlying facts of Allen's vandalism conviction, the trial court permitted defense counsel to do the same. The court provided a list in writing to the attorneys indicating which facts could be asked of Allen regarding her vandalism conviction. The court allowed questions of whether Allen was experiencing mental health issues the day of the vandalism; whether Allen was using drugs at the time; whether Allen "enter[ed] the location and beg[an] smashing property and throwing plates[;]" whether Allen "shatter[ed] several windows at the location[;]" and whether "the motivation behind [Allen's actions] was because [she] was upset she had loaned her mom $10,000." The court stressed that it "wouldn't allow . . . the entire incident to be re-litigated."

The court concluded, "[A]nything else above and beyond what's already been asked, I'm going to exercise my discretion under [Evidence Code section] 352. It's an undue consumption of time. The probative value is substantially outweighed by prejudice, and the undue consumption of time."

Appellant contends that had the jury heard certain underlying facts of Allen's 2009 vandalism conviction, the jury would have likely interpreted Allen's claims against appellant as a product of drug-induced paranoia. The Attorney General argues the trial court acted within its discretion and any possible error was harmless.

### C. *Analysis*

We review trial court decisions regarding Evidence Code section 352 for abuse of discretion. (*People v. Montes* (2014) 58 Cal.4th 809, 869.) In criminal proceedings, any prior felony conviction of any person can be used for the purposes of impeachment. (Cal. Const., art. I, § 28.) Under Evidence Code section 788, prior felony convictions can be used to attack a witness's credibility.[8] (Evid. Code, § 788.) However, using evidence of

---

[8] The four Evidence Code section 788 exceptions for when a witness's prior felony conviction cannot be used do not apply to Allen. These exceptions are "(a) A pardon based on [her] innocence has been granted to the witness by the jurisdiction in which [she] was convicted. [¶] (b) A certificate of rehabilitation and pardon has been granted to the witness under the provisions of Chapter 3.5 (commencing with Section 4852.01) of

11

prior felony convictions for impeachment purposes is still subject to limitation by Evidence Code section 352. (*People v. Castro* (1985) 38 Cal. 3d 301, 307.)

Because the trial court allowed in evidence of Allen's vandalism conviction, the issue concerns whether the trial court erred in restricting defense counsel from inquiring into additional underlying facts of that conviction — such as Allen telling the police her cousin was going to shoot her or that one of Allen's siblings had a restraining order against Allen.

To be admissible for impeachment, Allen's past misconduct must involve moral turpitude. (*People v. Castro* (1985) 38 Cal.3d 301, 317 [A witness' prior conviction is only admissible for impeachment purposes "if the least adjudicated elements of the conviction necessarily involve moral turpitude"].) The California Supreme Court defines moral turpitude as a "readiness to do evil" or a "moral depravity of any kind." (*People v. Lang* (1989) 49 Cal.3d 991, 1009.) Without delving into the specific circumstances and motivations of Allen's past misconduct, we assume that her vandalism conviction meets the moral turpitude requirement. (See *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1496 [holding that felony vandalism involves moral turpitude].)

Beyond "the relevance requirement of moral turpitude . . . the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad." (*People v. Clark* (2011) 52 Cal. 4th 856, 931.) Because the court's discretion to admit or exclude impeachment evidence "is as broad as necessary to deal with the great variety of factual situations in which the issue arises" (*People v. Collins* (1986) 42 Cal.3d 378, 389), a reviewing court ordinarily will uphold the trial court's exercise of discretion. (*People v. Hinton* (2006) 37 Cal.4th 839, 888.)

Appellant relies on *People v. Wheeler* (1992) 4 Cal.4th 284 to argue pursuant to Article I, section 28 of the California Constitution, statutory prohibitions on impeachment

Title 6 of Part 3 of the Penal Code. [¶] (c) The accusatory pleading against the witness has been dismissed under the provisions of Penal Code Section 1203.4 , . . . [¶] (d) The conviction was under the laws of another jurisdiction and the witness has been relieved of the penalties and disabilities arising from the conviction pursuant to a procedure substantially equivalent to that referred to in subdivision (b) or (c)." (Evid. Code § 788.)

with conduct evidence other than felony convictions no longer apply in criminal cases. We disagree. In *Wheeler*, the issue was whether evidence of prior misdemeanor convictions – not underlying facts of the convictions—should be allowed in for impeachment purposes. (*Id.* at p. 288.) The California Supreme Court specifically stated, "By its plain terms, section 28(d) [of the California Constitution] requires the admission in criminal cases of all 'relevant' proffered evidence unless exclusion is allowed or required by an 'existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, [s]ections 352, 782 or 1103,' or by new laws passed by two-thirds of each house of the Legislature." (*Id.*, at p. 292, italics omitted.)

Here, the evidence of Allen's past misconduct was subject to limitation by Evidence Code section 352. The trial court explicitly stated it "wouldn't allow . . . the entire [vandalism] incident to be re-litigated" because it would be "an undue consumption of time." We conclude the trial court did not abuse its discretion in limiting defense counsel's cross-examination of Allen's vandalism conviction. Appellant asserts further questioning would have elicited that Allen's 2009 conviction was a product of drug-induced paranoia and a similar inference could be made for appellant's case. Defense counsel was not barred from drawing such an inference for the jury.

During the vandalism incident, Allen was experiencing mental health issues, was not on her prescribed medication and was under the influence of drugs. Those three factors were also present when Allen claimed appellant threatened her. The trial court did not preclude defense counsel from eliciting testimony of these three factors. Not only did the trial court allow defense counsel to cross-examine Allen on the fact that she was convicted of felony vandalism, but the trial court also permitted defense counsel to ask Allen about her drug use, mental health issues and medication during the vandalism incident. Defense counsel wanted to discredit Allen's testimony by showing the jury that (1) Allen's vandalism conviction stemmed from a drug-induced paranoia and (2) Allen was suffering from a similar drug-induced paranoia on the night she accused appellant of threatening her. Defense counsel had ample opportunity to draw this inference and make this argument. The trial court only barred defense counsel from asking about five

13

underlying facts of Allen's vandalism conviction: (1) Allen broke into the house; (2) one of Allen's siblings had a restraining order against her; (3) Allen locked all the doors, preventing anyone else from entering; (4) when a detective tried to talk to Allen, Allen said she wanted to talk to a "real detective," not an actor; and (5) Allen told the police her cousin was going to shoot her. In addition to the three factors connecting the vandalism conviction to Allen's account of appellant's threats, defense counsel was also allowed to ask about Allen's actions in smashing property, throwing plates and shattering windows when she vandalized her mother's home. In her closing statements, defense counsel argued her drug-induced paranoia theory and described why and how Allen's behavior was irrational. In view of the evidence appellant was allowed to present and counsel's argument to the jury, appellant has not shown that the trial court erred in limiting defense counsel's cross-examination of Allen's vandalism conviction.

A trial court "need not expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows the court was aware of and performed its balancing function under Evidence Code section 352." (*People v. Edwards* (2013) 57 Cal.4th 658, 724.) The record reflects the trial court expressly referred to the weighing process in exercising its discretion to limit the cross-examination.

Even if the trial court erred, the error was harmless and the judgment should be affirmed. A trial court's erroneous exclusion of defense evidence is reviewed under the *Watson* standard, which states an error is harmless if it does not appear reasonably probable a result more favorable to the defendant would have been reached absent the error.[9] (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

---

[9] Appellant also asserts that this limitation in Allen's cross-examination constitutes a Confrontation Clause violation and the *Chapman* standard should be used. (*Chapman v. California* (1967) 386 U.S. 18, 24 ["[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"].) We disagree. The Sixth Amendment's Confrontation Clause guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. "The main and essential purpose of confrontation is to secure for

Appellant's main objective in asking Allen about the circumstances of her vandalism conviction was to discredit her testimony. Yet of the three charged crimes, appellant was only convicted of criminal threats. With respect to this charge, Allen's testimony was not the sole basis of evidence. This conviction was also corroborated by Malveaux's testimony. Malveaux testified to hearing Allen tell her of appellant's threats towards Allen. Malveaux also witnessed appellant threaten Allen. Malveaux testified that while she was in the car with Allen and appellant, Allen said appellant "was going to kill her and that she doesn't know what happened." Malveaux testified that appellant responded, "You're damn right I'll kill you, bitch." Allen said, "My son is a police officer." Appellant replied, "I don't give a fuck. You don't know my family." Malveaux testified that she was frightened by the situation and was "looking for the police" while they were driving. Thus, because defense counsel was able to connect her paranoia theory with Allen's vandalism conviction and because there was another corroborating eyewitness, we hold the error was harmless.

## IV.   Appellant's Claim of Prosecutorial Misconduct

Appellant claims the prosecutor committed misconduct when he repeatedly asked leading questions during his direct examination of Allen. The Attorney General argues

---

the opponent the opportunity of cross-examination." (*Davis v. Alaska* (1974) 415 U.S. 308, 315.) The Confrontation Clause does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.) Nor does the Confrontation Clause "prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issue, the witness's safety, or interrogation that is repetitive or only marginally relevant." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678-679.) The trial court's limitation of defense counsel's cross-examination did not violate the Confrontation Clause because appellant was given and exercised his opportunity to confront and cross-examine Allen. Thus, the *Chapman* standard should not be applied.

appellant forfeited his claim of prosecutorial misconduct because defense counsel failed to make such an objection at trial and did not request an appropriate admonition.

## A. *Appellant Did Not Preserve His Prosecutorial Misconduct Claim for Appeal*

Generally, a defendant preserves a prosecutorial misconduct claim for appeal when the defendant makes a timely and specific objection and asks "the trial court to admonish the jury to disregard the impropriety unless doing so would be futile or an admonition would not cure the harm." (*People v. Whalen* (2013) 56 Cal.4th 1.)  Defense counsel did not make a timely and specific objection to the repeated use of leading questions during Allen's direct examination.  Nor did she object to the entire direct examination.  For the objections defense counsel did make, she did not request an admonition.  Moreover, appellant does not claim that any objection or any request for admonition would have been futile.  As a result, appellant did not preserve his claim of prosecutorial misconduct for appeal.

## B. *Appellant's Prosecutorial Misconduct Claim Is Not Preserved By His Claim of Ineffective Assistance of Counsel*

To overcome forfeiture, appellant asserts his claim is preserved for appeal because defense counsel's failure to object constitutes ineffective assistance of counsel.  With respect to ineffective assistance of counsel claims, the California Supreme Court has established, "[i]f the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected."'" (*People v. Vines* (2011) 51 Cal. 4th 830, 876 citing *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)  The California Supreme Court explained that "it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas

16

corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct." (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)

A claim of ineffective assistance of counsel is shown when the defendant establishes both of the following: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. (*People v. Huggins* (2006) 38 Cal.4th 175, 205-206; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

First, with respect to defense counsel's performance, "[t]he proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland v. Washington, supra,* 466 U.S. at p. 669.)

Here, the issue is whether "the record on appeal affirmatively discloses that counsel had no rational tactical purpose" for not objecting more frequently to the prosecutor's leading questions or for not objecting to the entire direct examination. (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.)

### 1. Objecting more frequently to the prosecutor's leading questions

With respect to whether defense counsel should have objected more frequently during Allen's direction examination, the "failure to object to leading questions certainly does not indicate incompetency; rather it sometimes is considered good trial technique not to object." (*People v. Chavez* (1968) 262 Cal.App.2d 422.) Because defense counsel did object to some of the prosecutor's leading questions, we can discern from the record

on appeal that defense counsel might have had a rational tactical purpose to not repeatedly and frequently object to leading questions during Allen's direct-examination.

## 2. Objecting to the entirety of Allen's direct examination

As for whether there was a rational tactical purpose for not objecting to the entire direct examination as prosecutorial misconduct, appellant points out that defense counsel stated on the record she understood the nature and gravity of the prosecutor's conduct. Following the trial court's ruling on the extent of questioning allowed on the underlying facts of Allen's prior felony conviction, defense counsel stated, "Now that [the prosecutor] mentioned that I repeatedly objected based on leading, I really believe that [the prosecutor] is feeding information into the mouth of the witness and I don't appreciate it. And I repeatedly objected. And I really hope that [the prosecutor] follows the rules of evidence and not lead the subsequent witnesses."

In response, the trial court judge stated, "Both parties are well aware of the California Evidence Code and the rules contained therein. Whoever has a witness on direct cannot ask leading questions. [¶] . . . You objected at the appropriate time and I sustained your objections when appropriate. Just both sides be cognizant, if it's your witness, do not ask leading questions." Defense counsel then resumed her cross-examination of Allen.[10]

Appellant is not arguing that this exchange was enough to preserve his claim of prosecutorial misconduct. Rather, appellant claims that defense counsel's act of recognizing the issue and raising it with the trial court while failing to make the appropriate objection or legal argument is proof that her omissions lacked a rational tactical purpose. However, "[f]ailure to object rarely constitutes constitutionally ineffective legal representation." (*People v. Boyette* (2002) 29 Cal.4th 381, 424.) Moreover, defense counsel's recognition of the prosecutor's leading questions and voicing it to the court does not indicate that her representation was objectively deficient.

---

[10]     This discussion was held outside the presence of the jury.

She may have thought it was more strategic to object during the direct examination rather than afterwards. Objecting to the entire direct examination and asking for certain portions to be stricken may have resulted in the prosecutor going back and reasking questions. This could have given the prosecutor a better opportunity to emphasize certain points of Allen's testimony with the jury or it could have irritated the jury.

Even assuming defense counsel should have objected, appellant failed to demonstrate defense counsel's omission resulted in prejudice. The California Supreme Court has stated "[p]rejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Lucas* (1995) 12 Cal.4th 415, 436, citing *In re Harris* (1993) 5 Cal.4th 813, 832-833.)

Appellant has not shown there was a reasonable probability that but for those leading questions on Allen's direct examination, appellant would have had a more favorable result. (*Strickland v. Washington, supra,* 466 U.S. at p. 695.) Appellant was convicted of criminal threats. Even if defense counsel objected to the entirety of Allen's direct examination, it is unlikely that appellant would have obtained a better result because of Malveaux's corroborating testimony. Malveaux testified she witnessed appellant say to Allen, "You're damn right I'll kill you, bitch." Of the three charges against appellant, appellant was only convicted of the charge where there was an independent witness. The prosecutor did not ask leading questions on the direct examination of this separate witness.

The Sixth Amendment guarantee to effective assistance of counsel " ensure[s] that criminal defendants receive a fair trial[,]" not a perfect trial. (*Strickland v. Washington, supra,* 466 U.S. at p. 689.) Appellant has not demonstrated that his counsel's failure to object to prosecutorial misconduct for asking leading questions during Allen's direct examination rendered his trial fundamentally unfair. Nor has appellant established the lack of objections "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Id*. at p. 686.)

19

## V.    Error in the Judgment

Appellant argues the abstract of judgment should not order compliance with a protective order because such an order is outside the court's jurisdiction.  The Attorney General does not contest this and states the abstract of judgment should be amended to reflect the actual sentence imposed.  We agree.

The minute order from appellant's sentencing indicates that he was to "obey the protective order issued in this or any other case" and that he was "served with a copy of the protective order in open court."  However, the record does not indicate that the trial court actually imposed a protective order as part of appellant's sentence.  When there is a discrepancy between the court's oral pronouncement and the minute order or abstract of judgment, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)  These minor, clerical errors are easily and appropriately corrected by order of this court.  (*Id.* at pp. 185-188.)

## DISPOSITION

The judgment is modified to strike the protective order.  As modified, the judgment is affirmed.  The superior court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

                                                                                    **WOODS, J.**

**We concur:**

        **PERLUSS, P. J.**                                                **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20